19385

Ernestine **RICHARDSON**, Respondent, v.
Hazzard **RICHARDSON**, Appellant
(187 S. E. (2d) 528)

*Messrs. Rankin & Johnson,* of Conway, *for Appellant,*

*Eldridge R. Inman, Esquire,* of Conway, *for Respondent.*

March 8, 1972.

BUSSEY, Justice:

In this action the lower court granted the respondent wife a divorce on the ground of physical cruelty; custody of two minor children; support for herself and the two children, and attorney's fees. The husband appeals from the decree only insofar as such granted a divorce.

For convenience, we refer to the parties by their first names. The events upon which this action is predicated occurred on or about July 9, 1970. At that time Ernestine and Hazzard had been married for ten years. They operated a store and their residence was apparently very close to the store. There were three children living in the home, Doris, the seventeen year old daughter of Ernestine by a previous marriage; Judy, aged twelve, daughter of Ernestine, adopted by Hazzard when she was five; and Perry, aged six, the son of both parties.

The decree of the trial court contains no analysis of the evidence nor any specific findings of fact, stating only as a conclusion that the court was convinced that Ernestine was entitled to a divorce on the ground of physical cruelty. In some respects the evidence in the case is in sharp conflict, but in others the facts are undisputed. No useful purpose could be served, we think, by reviewing in detail all of the conflicting evidence. A central figure in the events of July 9, 1970 was Ernestine's daughter, Doris, who has

since married and who was not called as a witness. Difficulty between Doris and Hazzard followed the placing by Doris of some bones for a neighbor's dog on the grass near or in front of where Hazzard was mowing the lawn and Hazzard's refusal to allow Doris to go to the beach for the weekend. A physical encounter melee or rukus ensued at the residence in which there was participation by Ernestine, Hazzard and Doris.

Ernestine was her only witness and, according to her, Hazzard hit her in the eye with his fist, knocking her down and giving her a black eye for a week or more. He also allegedly hit her on the right side of her head with a boat paddle, thereby inflicting a wound. Hazzard denies striking her with his fist in the face or elsewhere, but admitted "pumping" her on the shoulder because, according to him, she called him an "s. o. b." It is fairly clear, we think, that Ernestine did receive a minor wound to the right side of her head by coming into contact with a boat paddle, but how the contact occurred is in dispute. The wound was characterized by her as leaving a one inch scar and by Hazzard as being the size of a grain of rice. It admittedly produced enough blood to bloody her face and blouse, but was insufficient to require medical attention. Hazzard tried to take her to the doctor but she refused.

Ernestine did not describe the boat paddle involved, but it was described by Hazzard as being a small, one-handed boat paddle with which he admittedly spanked Doris several times after she, Doris, had allegedly attacked Hazzard. Two different times in the course of the action between Hazzard and Doris, Ernestine went to the assistance of Doris and used a broom or broom handle on Hazzard. Under any view of the testimony, a struggle was in progress between Doris and Hazzard when Ernestine received the injury from the boat paddle. Much of her testimony is to the effect that she was purposely struck with the paddle, but at one point in the course of cross-examination she agreed that it was an accident. Hazzard testified that he did not know of the injury

to her head until he saw the blood some moments later, after he had returned to the store.

In addition to his own testimony, Hazzard called five witnesses. Included were witnesses who saw Ernestine immediately after the affray and in the course of several days thereafter. None of them corroborated her story of having sustained a black eye. The only disinterested witness called, who saw any part of the affray, was a Mr. Skipper who lived directly across the street and who was seated on his front porch during at least a portion of the affray. He contradicted Ernestine's previous testimony to the effect that Hazzard had dragged Doris out of the house. According to his version, Hazzard was on the porch with the boat paddle, a water jug and the broomstick which he had taken away from Ernestine when Doris shoved Hazzard out of the porch into the yard and jumped on him in the yard, grabbing Hazzard by the leg. In brief, his testimony would reflect that Doris, rather than Hazzard, was the agressor.

Although the marriage between the parties had apparently not been a harmonious one, Hazzard admittedly never laid a hand on Ernestine prior to July 9 when the particular affray occurred, whereupon Ernestine departed. There is no testimony by Ernestine to the effect that she is in fear of serious bodily harm from Hazzard if she continued cohabitation with him. Indeed, the contrary is inferable from her testimony.

We have consistently followed the rule that a single act of physical cruelty will not ordinarily constitute grounds for divorce, unless it is so severe and atrocious as to endanger life, or unless the act indicates an intention to do serious bodily harm, or causes reasonable apprehension of serious danger in the future. The burden here was upon Ernestine to establish by the preponderance of the evidence her charge of physical cruelty against Hazzard as that term has been consistently defined in our decisions. Such burden could be met only by producing credible evidence in corroboration of her testimony or furnishing a

reasonable explanation of the absence of such testimony. *Bankhead v. Bankhead*, 254 S. C. 78, 173 S. E. (2d) 372, and cases therein cited.

Here, at the most, in ten years of marriage Ernestine received two blows in the space of several minutes and the evidence as to the manner and extent of both blows is in sharp conflict. Neither resulted in any injury of serious consequence to Ernestine or required any medical treatment. There is nothing, we think, from which could be inferred an intention on the part of Hazzard to do Ernestine any serious bodily harm. The lack of any serious injury from contact with the boat paddle clearly tends to corroborate the accidental, rather than intentional, nature of that blow.

There is no corroboration whatever in the record of Ernestine's claim that she got a black eye from a fist blow, and none of an intentional blow from the boat paddle. There is no explanation whatever of the absence of credible corroborating testimony on behalf of Ernestine and particularly no explanation of the failure of her daughter Doris to testify in her behalf.

We are convinced that the evidence does not justify a conclusion that the burden of proof of physical cruelty, as consistently defined by this Court, has been met by a preponderance of the evidence.

Reversed.

Moss, C. J., and LEWIS, BRAILSFORD and LITTLEJOHN, J.J., concur.