## 18383

Annie Lee C. CROWDER, Respondent, v. JAMES W. CROWDER, Appellant

(143 S. E. (2d) 580)

300

*Messrs. Raymond C. Hill* and *Justin A. Bridges,* of Laurens, *for Appellant,*

*Marshall W. Abercrombie, Esq.,* of Laurens, *for Respondent,*

July 22, 1965.

LEWIS, Justice.

The wife brought this action in the Civil and Domestic Relations Court of Laurens, South Carolina, on April 1, 1964, for a divorce on the ground of physical cruelty, for

permanent custody and support of the two minor children of the parties, and for a property settlement. The answer of the husband consisted of a general denial of the allegations of the complaint, and expressed a desire for a reconciliation with his wife. After hearing the testimony, a decree was issued by the Judge of the Civil and Domestic Relations Court, in which the wife was awarded (1) a divorce upon the ground of physical cruelty, (2) permanent custody of the children of the parties, and (3) Thirty ($30.00) Dollars per week for the support of the children. Subsequently, upon motion of the plaintiff, a supplemental decree was issued in which the wife was awarded a one-third interest in a house and lot owned by the husband and occupied by the parties before their separation, together with a one-half interest in the furniture and furnishings in the house, "in full settlement of all property rights and claims of alimony."

The husband has appealed from the foregoing judgment. The exceptions challenge (1) the sufficiency of the evidence to support the findings of the lower court as to physical cruelty, and (2) the jurisdiction of the Civil and Domestic Relations Court of Laurens to determine the issues relating to a property settlement.

We need only consider the exceptions which challenge the factual findings of the trial judge that the wife had established the charges of physical cruelty. Since this is an equity case, it is necessary that we review the evidence to determine whether or not such findings are supported by the preponderance of the evidence. It is now well settled that this court has jurisdiction in appeals in equity cases to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of a verdict by a jury; and may reverse a factual finding by the lower court in such cases when the appellant satisfies this court that the finding is against the preponderance of the evidence. *Forester v. Forester,* 226 S. C. 311, 85 S. E. (2d) 187.

The parties were married in December 1954 and have two children, ages eight and three. The wife is twenty-eight years of age and the husband forty-three. Both have been gainfully employed since their marriage, the wife having a gross income now of about $84.00 per week and the husband a gross weekly income of $130.00. At the time of their separation, the parties resided in a six room brick home located on a thirty-five acre tract of land owned by the husband. The home is clear of indebtedness as is their furniture and household equipment. They lived together for approximately nine and one-half years, separating about March 24, 1964 when the wife left and went to the home of her parents, taking the children with her. The wife claimed that the separation was caused by acts of physical cruelty inflicted upon her by the husband, which he denied.

The alleged acts of physical cruelty which form the basis of this action began, according to the wife, in 1955 or 1956 and continued until the separation on March 24, 1964. She said that the first incident occurred when her husband kicked her in the stomach while she was pregnant with her first child. While the date is not given, this would have apparently been in either 1955 or 1956. Next, she testified that, when their oldest child was about three weeks old, the husband slapped her to the floor, stomped her in the face, got his gun and began waving it in the air. This incident occurred in 1956. She further testified that, about a year later, in 1957, her husband beat her, leaving her with a stiff neck for almost two weeks. After this incident, her testimony is that she went to the doctor and was away from work for one day.

Subsequent to the foregoing incidents and before the final alleged act, the wife testified that her husband inflicted physical abuse upon her on five or six occasions, three or four times during the last year that they lived together. The nature or severity of these alleged attacks was not described.

After some of the above alleged attacks by the husband, the wife testified that she left the home and went to her

parents who lived in the same community, but returned in a short while, usually the same day, after the husband promised to do better. With reference to other occasions, she said that she did not leave her husband because the attacks usually happened at night and by morning his "fits" were over. Her reason for continuing to live with him was because she had two children to think about and wanted to make a go of it for them.

The husband denied all of the foregoing accusations made against him by the wife.

The final act of physical cruelty charged against the husband occurred in the late afternoon of March 24, 1964. It seems that the husband had been suspicious of his wife's relations with another man. The subject arose at the supper table and the discussion resulted in the husband slapping the wife, after which she left and the parties have not lived together since. The wife's version of the attack is as follows:

"Q. All right. Did you say or do anything to cause him to choke you or hit you? Did you do anything to him?

"A. No. It was just a little argument.

"Q. What do you mean, a little argument?

"A. Well, it seems that he kept accusing me of talking to a man that worked with me and I told him that I wasn't interested in him or the other man either. And he got mad and slapped me, slapped a cup of coffee that I had in my hand, and it went all over myself and the baby. Then he jumped up and started beating me and choking me."

The husband admitted slapping his wife on the above occasion, but gave a somewhat different version of the incident. He said that they were having an argument about the other man and that he slapped her under the following circumstances:

"And she said, 'Well, let me tell you one thing. I'll do anything I want to, with whom I want to and when I please.' And I said, 'I wish you wouldn't do that,' and she said, 'You know, I'm just tired of you. I wish you would

just get on out of here.' And she throwed a cup of coffee in my face. We were sitting at the bar eating supper, me and her, and Jimmy and Tommy, and I instinctively slapped her jaws in self defense, without thought, for which I apologized to her and she accepted them provided I would give her a divorce. That's the only time I've ever touched her in my life, I mean in a violent way."

There is testimony that the wife and the other man were seen frequently talking to each other in the parking lot where they worked. One witness saw them sitting in a car together and another said that he saw them on one occasion "holding hands." The wife denied any improper conduct and attributed her husband's accusations in this regard to jealousy on his part.

We have not attempted a review of all of the testimony. Some of it, given without objection, is hearsay, based upon what the wife at various times told the witnesses. The probative value of such testimony, however, was further weakened by other evidence in the case.

Physical cruelty within the meaning of our divorce statute means "actual personal violence, or such a course of physical treatment as endangers life, limb or health, and renders cohabitation unsafe." *Brown v. Brown*, 215 S. C. 502, 56 S. E. (2d) 330, 15 A. L. R. (2d) 163. The *Brown* case further states: "Continued acts of personal violence producing physical pain or bodily injury and a fear of future danger are recognized as sufficient cause for a divorce for cruelty in nearly all jurisdictions, especially where accompanied by other acts of ill treatment. * * * It is not every slight violence, however, committed by the husband or wife against the other, even in anger, which will authorize the divorce."

While our decisions have so defined physical cruelty, it is recognized that the determination of whether conduct falls within the meaning of the term is governed by the particular circumstances of each case.

The wife said that the husband kicked her in the stomach in 1955 or 1956 while she was pregnant; that in 1956 he knocked her down and stomped her in the face; that he beat her in 1957 to such an extent that her neck was stiff for two weeks and required medical attention; and that on at least a half dozen other instances he beat and choked her. Yet, she continued to live with him; they had another child, now three years of age; and cohabited as man and wife until January 1964, about one month before the separation. In spite of the fact that she said she was bruised after some of the numerous beatings and went to the home of her parents, they testified that they saw no bruises or marks upon her until after the last incident in March 1964. The doctor who allegedly treated her in 1957 for the stiff neck was not called to testify.

She said that on the last occasion her husband slapped, beat and choked her. Although her father and mother testified that her ear and neck were black and blue when they saw her about two hours later, they are the only ones who saw such injuries. At no time did the wife describe any marks or bruises upon her as a result of the last alleged attack by the husband. There is no testimony that the wife missed any time from work because of any such injuries; yet, a witness who worked with her, while testifying that she had at a prior time seen a bruised place on the wife, stated that she did not see the injuries allegedly observed by the mother and father. The wife said that she left home shortly after the last incident, went first to her lawyer's office, and then to the magistrate's office where she signed a warrant for her husband for simple assault and battery. The warrant was not introduced in evidence and there is no testimony that, if issued, it was ever served. In fact, it is inferable that a warrant was never served on the husband and the fact of its issuance, if issued, never brought to his attention. The magistrate was not called to testify although he certainly would have been shown the evidences of the severe beating, if they existed, when the wife allegedly

went to his office a few minutes thereafter. The incident which allegedly caused the separation occurred on March 24, 1964, and the wife instituted this action within one week thereafter, on April 1, 1964.

The burden was upon the wife to establish by the preponderance of the evidence the charges of physical cruelty against her husband. This carried with it the necessity of presenting corroboration of the material allegations of her complaint or an explanation for its absence. *McLaughlin v. McLaughlin,* 244 S. C. 265, 136 S. E. (2d) 537.

While we are reluctant to reverse the factual findings of the trial judge who had an opportunity to hear the testimony and observe the parties, we feel compelled to do so in this case where the testimony of the complaining party is so lacking in corroboration by available disinterested witnesses as to cast serious doubt upon the truth, in many respects, of material portions of her testimony. She has failed to show by the greater weight of the evidence that her husband has been guilty of physical cruelty within the meaning of our divorce statute. The record fails to sustain by such proof that the husband made any physical attack upon her of a violent or serious nature, nor that any act of the husband indicated an intention to do serious bodily harm or to cause her reasonable apprehension of serious danger in the future. The lower court should have denied the divorce for failure of the wife to establish her claims of physical cruelty.

Since we have concluded that the lower court was in error in granting a divorce to the wife on the ground of physical cruelty, the property settlement based upon the divorce is also reversed. However, questions concerning the custody and support of the children are not involved in this appeal and the judgment of the lower court with respect to such matters is unaffected by this decision.

Reversed.

TAYLOR, C. J., and MOSS, BUSSEY and BRAILSFORD, JJ., concur.