18628

C. D. BISHOP and Enos O. Bishop, Appellants, v. Garland TOL-
BERT, Lee Alice T. Brockman and W. R. Timmons, Respondents

(153 S. E. (2d) 912)

*Messrs. Younts, Reese & Cofield,* of Greenville, *for Appellants,* and *George S. Townes,* of Greenville, *on Brief for Appellants,*

*Messrs. Ernest J. Howard* and *Benjamin A. Bolt,* of Greenville, *for respondents, Tolbert* and *Brockman,* and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for respondent, W. R. Timmons,*

April 3, 1967.

Moss, Chief Justice.

This action was brought by C. D. Bishop and Enos O. Bishop, the appellants herein, against Garland Tolbert, Lee Alice T. Brockman, the respondents herein, to enforce the specific performance of a contract made by the appellants with the respondents whereby they agreed to sell to the appellants a tract of land containing 19.9 acres, more or less, located in Greenville County, South Carolina. W. R. Timmons was joined as a party to this action because of a sales contract made with him by the respondents subsequent to the time of the making of the contract between the appellants and respondents. The appellants demanded upon the court ordering specific performance of their contract with the respondents and that the Timmons contract be nullified and declared of no force and effect.

This cause was referred to the Master in equity for Greenville County to take the testimony and to report his findings of fact and conclusions of law. The Master in Equity, on April 28, 1966, filed his report, finding that the appellants were not entitled to specific performance of the contract in question. The appellants filed numerous exceptions to the Master's report and a hearing was held thereon before The Honorable Frank Eppes, Resident Judge of the Thirteenth Circuit, who, by his order of August 16, 1966, confirmed the Master's report and made it the judgment of the circuit court. This appeal followed.

The exceptions of the appellants raise the following questions: (1) was time of the essence of the contract; (2) did the Master and Circuit Judge err in failing to find that the appellants were ready, willing and able to perform the contract; and (3) were the respondents chargeable with conduct which showed that they were not ready, willing and able to perform their contract. We consider these questions in the light of the well established rule that in suits in equity findings of fact by a Master,

concurred in by the Circuit Judge, are not to be disturbed on appeal unless it is shown that such findings are either without evidentiary support or are against the clear preponderance of the evidence. *Crown Central Petroleum Corp. v. Elmwood Properties,* 244 S. C. 588, 138 S. E. (2d) 38.

By the terms of the contract entered into on August 2, 1965, the respondents agreed to sell and the appellants agreed to purchase "that parcel of land situate in the County of Greenville, State of South Carolina, containing 19.9 acres, more or less, located on both sides of Heyward Road and being the same property as received by (respondents) from the estate of James Tolbert, who died in 1938, in the County of Greenville". The purchasers agreed to pay the sellers for said tract of land the sum of Twenty-five Thousand & 00/100 ($25,000.00) Dollars, of which One Thousand & 00/100 ($1,000.00) Dollars was paid upon the making of the contract, and the balance of Twenty-four Thousand & 00/100 ($24,000.00) Dollars was to be paid "on or before September 1, 1965" and "upon the payment of the purchase price above set forth" the respondents agreed to execute and deliver to the appellants a good fee simple general warranty deed to the property.

At the time the contract of sale was entered into, the respondent, Garland Tolbert, was a resident of Cleveland, Ohio, and the respondent, Lee Alice T. Brockman, was a resident of the City of New York. They have relatives who reside in the same section of Greenville County as do the appellants. The property which was the subject of the contract is located in the same section of Greenville County.

Garland Tolbert was in Greenville County on August 2, 1965, for the purpose of seeing a real estate dealer about selling the above described property when he stopped at the place of business of C. D. Bishop, one of the appellants. Tolbert and Bishop then began negotiations for the sale and purchase of the property, and upon reaching an agreement thereabout they went to Fountain Inn to see an attorney who now represents the appellants. This attorney prepared

the aforementioned contract and such was executed by the appellants and Garland Tolbert. Thereafter, the contract was mailed to the City of New York where it was executed by Lee Alice T. Brockman. This attorney was at that time employed by the appellants to attend to the closing of the transaction and he was to prepare the deed for execution by the respondents. It was agreed that if the respondents could not come to Greenville, the necessary instruments would be sent to them for execution. It appears that there was no further contact or communication between the respondents and the appellants nor with the attorney for the appellants until August 28, 1965, when Lee Alice T. Brockman telephoned the appellants' attorney and inquired whether the appellants would be ready to close the transaction on September 1, 1965. Lee Alice T. Brockman was told to come to Greenville from New York for the purpose of concluding the transaction and in compliance with this request she came from New York to Greenville, and Garland Tolbert having been notified by Lee Alice T. Brockman came from Cleveland to Greenville to conclude the transaction.

The Master found as a fact that the respondent, Lee Alice T. Brockman, was advised during the telephone conversation that there was no reason why the transaction could not be closed on September 1, 1965. The testimony upon this issue as given by Lee Alice T. Brockman was as follows:

"I said to Mr. Younts—'I notice on the contract it calls to be closed September 1st, and I had not heard from you'. He said—'The reason I have not notified you and Garland, I hadn't got the surveyor out there yet'. He said that he would try to get the surveyor out Monday, August 30th. And I said—'I am disappointed, I had planed to come down'. He said—'Come on down, I am sure we will be ready to close on the 1st'. I said to him—'I am leaving Monday and I will be there Tuesday at my brother's house above Mr. Bishop's, please notify my brother at what time the closing will be.' "

The brother referred to was the Reverend Theodore Tolbert and he lived approximately one hundred yards from Bishop's place of business.

Following the conversation of Lee Alice T. Brockman with the attorney for the appellants she secured permission from her employer to be absent from work for one week so she could come to Greenville for the purpose of closing the sale of the land to the appellants. She arrived in Greenville on August 30, and her brother arrived on August 31. The Master found as a fact that these parties arrived in Greenville on the above stated dates. It was testified that the attorney for the appellants did not call or get in touch with them in any way, even though he had promised that he would. It was further testified that the respondents made several unsuccessful efforts to contact the appellants and the first contact made was on the night of September 5, 1965. As a result of the conversation with one of the appellants on September 5, 1965, the respondents, with their brother, went to the place of business of the appellants on the morning of September 6, 1965, and accompanied one of the appellants to the property for the purpose of finding the pins representing the boundary markers to the tract of land. It was tesified that one of the appellants said that he would not buy the property unless he found these pins. We here point out that it was stipulated that the appellants would consummate the purchase of the property in question regardless of acreage and there was no requirement for making a new survey or locating the pins. The testimony as to the conversation between the respondents and one of the appellants while they were on the property is in conflict. The Master accepted the version given by the respondents.

After the parties had been to the premises in question and while they were still there, a conversation between Lee Alice T. Brockman and C. D. Bishop took place. We quote such:

"Q. Tell the Court what that conversation was?

"A. I said—'Mr. Bishop, are you going to close today?' And he said—no, he could not close because he couldn't find

the pins. I said—'Mr. Bishop, I would like for you to close, I have to be back in New York'. And he said he could not close. I said—'You bought this tract for $25,000.00, if there is a quarter acre less you are not going to give any less or more, or get any less or more, why don't you close. I can't stay any longer'. And he said—'No, I can't close'. My brother, Amos, said—'Go ahead and close, if you have to have the survey you can have it done after they are gone'.

"Q. Was that conversation on the premises?

"A. Yes.

"Q. Did he tell you he was going to do it before he closed?

"A. Said he would have to have the survey first.

"Q. You left the property and went back to his place of business?

"A. Yes.

"Q. Did you have any further conversation?

"A. When he got out of the car I said—'Mr. Bishop, if you don't close tomorrow morning I am leaving, I can not stay any longer, and the contract will be off tomorrow morning'. And that was all.

"Q. Did you tell him where you would be?

"A. He knew we were staying at my brothers.

"Q. He knew you were there?

"A. Yes.

"Q. You could holler over to his place of business?

"A. Yes.

"Q. What did Mr. Bishop say when you told him that?

"A. That he could not close it until—"

Amos Tolbert, a brother of the respondents, testified with reference to the foregoing conversation, as follows:

"A. After we came back to the car, we were standing at the car and my sister came over and asked Mr. Bishop—'Why don't you close out today, I have to go back to New York to my job.' Mr. Bishop spoke up and said—'We have to get a survey and find the pins before we can do anything'. So I said Mr. Bishop—'They have been here all the week,

why don't you go ahead and close with them, you know where the pins and everything is, they have to get on the job, they have been here all week, why don't you close out with them,' He said—'We can't do anything.'

"Q. Did he say anything about closing or not closing until he had a survey made?

"A. He said he had to find all the pins before he closed." Garland Tolbert testified as follows:

"Q. What did he (Bishop) tell your sister?

"A. Said he was trying to find the pins.

"Q. What did he say he would or would not do?

"A. He told my sister he would have to find the pins before he would buy the property, said he wouldn't buy it unless he found the pins.

"Q. That statement was made—where was that made, over at the garage or over at the property?

"A. Over at the property."

The appellants' version of the conversation of September 6, 1965, was given by C. D. Bishop who testified that he told the respondents that they would meet the next morning at 9:00 o'clock A. M., at his attorney's office where they would settle everything "plat or no plat." This testimony was denied by the respondents. There was no contact between the parties to the contract on September 7, 1965. C. D. Bishop admitted in his testimony that he and his brother were purchasing the tract of land in question regardless of the acreage and it wasn't necessary to have it surveyed.

It further appears from the record before us that the appellants had made the necessary financial arrangements with a bank and had available the funds to pay the purchase price of the land. By letter dated September 8, 1965, the respondents notified the appellants that "we gave you through Tuesday, September 7, 1965 in which to comply with said contract but since you have failed to comply with said contract, this is to advise you that the same is now terminated and no longer in effect." The attorney for the appellants, by letter dated September 10, 1965, addressed to counsel for one of

the parties to this action, stated that his clients were ready to proceed with the closing of the transaction and that the deed for the premises had been prepared since the middle of August, 1965.

The issues in the trial of this case were essentially factual and since the testimony was in sharp conflict, the credibility of the witnesses and the resolution of the testimony was a matter peculiarly within the province of the Master. It was his duty to pass upon the credibility of the witnesses whom he saw and heard, *Byrd v. King,* 245 S. C. 247, 140 S. E. (2d) 158.

The Master found that the respondents were in Greenville ready, able and willing to comply with their contract with the appellants and made numerous efforts to have the transaction closed but were unable to do so. He found that the appellants failed to tender the purchase price to the respondents within the time limitation of September 7, 1965. He further found that under the facts of this case that time was of the essence of the contract and because of the appellants failure to consummate the contract and tender the purchase price within the time specified, they were not entitled to specific performance of the contract. These findings of fact have been concurred in by the Circuit Judge.

The rule is well settled that the granting of specific performance is not a matter of absolute right, but rests in the sound or judicial discretion of the Court, guided by established principles, and exercised on a consideration of all the circumstances of each particular case. *Mobley v. Quattlebaum,* 101 S. C. 221, 85 S. E. 585; *Mitchum v. Mitchum,* 183 S. C. 75, 190 S. E. 104; *Flowers v. Roberts,* 220 S. C. 110, 66 S. E. (2d) 612. It has been said that "there is no branch of equity jurisdiction in which the Court is allowed the greater exercise of a sound and reasonable discretion, 'which governs itself, as far as it may be, by general rules and principles,' than that which relates to the specific performance of agreements. * * * 'The question is not what the Court must do, but what it may do, under the circum-

stances' ". *Lesesne v. White,* 5 S. C. 450. This discretionary power exists whether the contract be in writing or oral. *Flowers v. Roberts,* 220 S. C. 110, 66 S. E. (2d) 612.

Among the established principles by which the court is guided and governed in the exercise of the sound discretion is that laid down in the early case of *Cureton v. Gilmore,* 3 S. C. 46:

" * * * He, therefore, who demands the execution of an agreement, ought to show that there has been no default in him in performing all that was to be done on his part; for, if either he will not, or through his own negligence cannot perform the whole on his side, he has no title in equity to the performance of the other party, since such performance could not be mutual. And, upon this reasoning, it is that where a man has trifled or shown a backwardness in performing his part of the contract, equity will not decree a specific performance in his favor, * * *."

And, as is said in *Thompson v. Dulles,* 5 Rich. Eq. 370, "The principle is sound and just, and demanded alike by morals and by policy, that he who has neglected to perform a duty which he might have performed, and ought to have performed, has no claim upon the court to compel the other party to perform his engagements. Whenever such negligent party comes into this Court, he must be told that he has neglected to do Equity, and has, therefore, deprived himself of the equity he claims."

Admittedly, upon the suggestion of one of the appellants' attorneys, the respondents had traveled a great distance from their place of residence and work in order to comply with the contract made by them with the appellants. One of the respondents had a leave of absence of only one week from her work. The appellants were advised of this fact and were put on notice that if this transaction was not closed on the morning of September 7, 1965, the contract would be at an end because of the necessity of this respondent returning to her work. The appellants contend that they were ready, able and willing to close this trans-

action. They admit that a survey was not necessary, that they had the money available to pay the purchase price and that a deed had been prepared since the middle of August, 1965. It thus appears that there was no reason why the transaction could not have been concluded by September 1, 1965, and certainly by September 7, 1965. However, even though the respondents were ready, able and willing to close this transaction, there is testimony that the appellants would not conclude this transaction until they first had a survey of the property and the pins located. The imposition of this condition by the appellants was contrary to the agreement of the parties and not in keeping with the provisions of the contract. This condition, imposed by the appellants, afforded them no excuse for failing to tender performance on their part as required by the contract.

Language in contracts for the sale of land, such as is contained in the contract in this case, that "upon the payment of the purchase price" the vendor would execute and deliver a deed has been repeatedly construed by the courts as creating dependent covenants, unless a contrary intention clearly appears. Where the covenants are dependent and concurrent neither party can recover against the other without a performance or offer to perform on his part, unless performance shall be excused or rendered impossible by the other party. Hence, if a vendee wishes to compel the vendor to fulfill his contract, he must make his part of the agreement precedent, and cannot proceed against the other without an actual performance of the agreement, on his part, or a tender and refusal. *American Nat. Bank, etc. v. Caldwell,* 166 S. C. 194, 164 S. E. 613.

Generally, time is not of the essence of a contract to convey land unless made so by express terms, or by implication from the nature of the subject matter, the object of the contract, or the situation or conduct of the parties. *Speed v. Speed,* 213 S. C. 401, 49 S. E. (2d) 588. However, where time is not originally of the essence of the contract, it may become so by agreement extending the time

for performance to a particular date. Time may be made of the essence by one party giving notice to the other that he will insist on a strict performance, or, if the time of performance has arrived or is passed, that he will insist on performance by a certain date, provided the time allowed by the notice is reasonable, which is a question of fact depending on the circumstances of the particular case. 91 C. J. S., Vendor & Purchaser, § 104c, pages 1003 and 1004.

We have carefully considered all of the testimony in this case and, in our opinion, it fully sustains the Master's findings. Being neither lacking in evidentiary support nor contrary to the clear preponderance of the evidence, his findings, concurred in by the Circuit Judge, are conclusive upon us. Under the facts found by the Master we think that he exercised a sound discretion in recommending that the appellants be denied the relief sought.

The exceptions of the appellants are overruled and the judgment below is affirmed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.