19036

Barbara Erwin BANKHEAD, Respondent, v.
Robert W. BANKHEAD, SR., Appellant

(173 S. E. (2d) 372)

*Messrs. Samuel B. Mendenhall* and *Hayes, Brunson &
Gatlin,* of Rock Hill, *for Appellant,*

*Melvin L. Roberts, Esq.,* of York, *for Respondent,* ▇▇▇

April 8, 1970.

BRAILSFORD, Justice.

This is an appeal by Robert W. Bankhead from a decree of divorce awarded to his wife by the Juvenile and Domestic Relations Court of York County on the ground of physical cruelty. In this equity case we have the authority, and the corresponding responsibility, to review the factual findings of the court below. *Crowder v. Crowder,* 246 S. C. 299, 143 S. E. (2d) 580 (1965). We need consider only those exceptions which challenge the court's conclusion that the wife has met the burden of establishing the asserted ground of divorce by the preponderance of the evidence.

The first incident alleged in the complaint occurred in August, 1967, after the wife had left the husband and gone to her father's home, taking the couple's young children with her. The husband followed her there to get the children. There is some corroboration of the wife's

testimony that when she tried to take one of the children from his arms, he "knocked" her, with his fist or the back of his hand, from the porch of the house into the yard, where she fell to the ground. However, she does not claim to have sustained any injury and shortly thereafter resumed cohabitation with her husband. The record leaves no doubt but that any marital offense committed on this occasion was condoned.

The only other incident referred to in the complaint as constituting physical cruelty occurred on November 7, 1967. According to the wife's testimony the husband awakened her late at night when she was trying to sleep. He became angry at her for lighting a cigarette, quoting from her testimony: "* * * (H)e jerked the curtains down from the wall, broke the rods, rammed his fists through the window and then jerked me up off the side of the bed, twisted my arm, hit me in the chest with his fist." She further testified that her chest was hurting her badly the next day, and she consulted a physician. However, he could find nothing wrong with her chest.

The wife again left the husband and went home to her family on the day after this incident, this time leaving the children with him. This action for divorce was commenced shortly thereafter.

About a week later the wife went to her mother-in-law's home in the exercise of visitation rights granted to her by a preliminary order. Her husband was there and, according to her testimony, "(h)e called me a name and I slapped at him and he knocked me down into his mother's floor and beat me and cracked two ribs on each side, my arm was bruised and swollen and I was sore from the back of my head to my waist from it." Again, she testified, "I went in there and he called me a two-bit whore and I started to slap him and when I did, he knocked me down in the floor. * * * (H)e had me in the floor beating until I could kick him off of me and I cursed him for a son-of-a-bitch when I kicked him."

On this occasion, the wife's parents were seated in an automobile outside the house. The father came in after the altercation and, according to the husband's mother, admonished his daughter about her "mouth" getting her into trouble.

The husband contradicted the wife's testimony in every material particular. He stated that he had only struck her once during their marriage, and that was a minor blow on the arm, some two years before the separation, which she provoked. His mother fully supported his version of the altercation at her house following the commencement of the action. Her father, who entered the house before she left it, did not testify. The only reference to the incident in her mother's testimony was the statement that she was crying when she left the house and entered her parents' car. There was no attempt to further corroborate her testimony as to this occurrence or as to the one which preceded it. The doctor whom she saw after her husband allegedly injured her painfully by striking her in the chest with his fist on November 7 was not called as a witness. No witness was called to testify that she was physically handicapped or in any degree disabled after her husband allegedly fractured four of her ribs. None testified to having seen any bruise, mark or other evidence of injury upon her person at any time. In short, her testimony that her husband abused her physically is without a semblance of corroboration, either circumstantial or direct, except as to the August incident which was condoned, and no explanation of the absence of such evidence was attempted.

The burden of proof was upon the wife to establish by the preponderance of the evidence her charges of physical cruelty against her husband. This burden could be met only by producing credible evidence in corroboration of her testimony or furnishing a reasonable explanation of the absence of such testimony. *McLaughlin v. McLaughlin,* 244 S. C. 265, 136 S. E. (2d) 537 (1964);

*Crowder v. Crowder,* 246 S. C. 299, 143 S. E. (2d) 580 (1965) ; *Brown v. Brown,* 250 S. C. 114, 156 S. E. (2d) 641 (1967).

We are reluctant to reverse the findings of fact of the trial judge who heard the witnesses testify. However, in this case we are convinced that the evidence does not justify the conclusion that the burden of proving physical cruelty, as defined by this court in numerous cases from *Brown v. Brown,* 215 S. C. 502, 56 S. E. (2d) 330 (1949), to *Brown v. Brown,* 250 S. C. 114, 156 S. E. (2d) 641 (1967), by the preponderance of the evidence has been met.

Reversed.

Moss, C. J., and LEWIS, BUSSEY and LITTLEJOHN, JJ., concur.