0175

Sanders R. GUIGNARD, Jr., as Trustee of The Sanders R. Guignard, Jr., Trustee Trust, Respondent, v. Marion G. ATKINS, Louis I. Guion, III, Jane Bruce Brooker, William G. Guion, Laura A. Vansopark, Elizabeth G. Ruhland and The Citizens and Southern National Bank of South Carolina and D. W. Robinson, Jr., as Trustee under the Will of E. G. Guion for M. L. Guion, Defendants, of whom Marion G. Atkins, Louis I. Guion, III, Jane Bruce Brooker, William G. Guion, Laura A. Vansopark, and Elizabeth G. Ruhland are Appellants.

(317 S. E. (2d) 137)

Court of Appeals

*Eugene F. Rogers,* of *Rogers, McDonald, McKenzie, Fuller & Rubin,* Columbia, and *Joseph O. Rogers, Jr.,* of *Rogers, Riggs & Rickenbaker,* of Manning, *for appellants.*

*Jeter E. Rhodes, Jr.,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *for respondent.*

Heard March 21, 1984.

Decided May 14, 1984.

SANDERS, Chief Judge:

Respondent Sanders R. Guignard, Jr., as Trustee of the Sanders R. Guignard, Jr., Trustee Trust, initiated this action for specific performance of an agreement with certain beneficiaries of the trust, or in the alternative, for a declaration of the rights of the parties. The master found the agreement to be fair and equitable and concluded specific performance should be required. The circuit judge concurred. We affirm.

The parties here are all members of the Guignard family. They have or had various interests in certain family properties titled in the names of a number of different entities. We refer to these properties in this opinion as the "Guignard properties." Appellants are members of the Guion branch of the Guignard family. We have designated them here as the "Guion group."

In 1975, appraisals of all but one of the Guignard properties were made by Wyman W. Trotti.

Then in 1976, the members of the Guion group and beneficiary Suzanne Seymour requested a partition of the Guignard properties which consisted of various corporations, partnerships and trusts. William G. Guion submitted a proposal that the partition be carried out in three phases. All beneficiaries, including the members of the Guion group, agreed to the proposed partition, based in part on the appraisals by Trotti.

The first two phases, dividing the corporate and partnership interests, were completed in the summer and fall of 1978. The third phase, division of the trusts, required the initial merging of all trusts into the Sanders R. Guignard, Jr.,

Trustee Trust. Deeds conveying the properties of the various trusts to this trust were drawn. Suzanne Seymour agreed to receive a certain parcel of land for her interest in the trusts, and that portion of the partition was completed. The members of the Guion group agreed to receive the property known as "Shuler Place" in exchange for their trust interests, and deeds were tendered to them accomplishing this.

Then seeds of discontent, which ultimately flowered into this suit, began to germinate. At the request of the members of the Guion group, Shuler Place was exclusively marketed by the appraiser Trotti for three to four months during early 1979. When the highest offer received during that period was $500 per acre payable 28 percent down and the balance over 5 years at 5 percent interest, the members of the Guion group became concerned about the true value of the property. Two additional appraisals were then made of Shuler Place, one by Otis Marshall Dodds, which tended to support the original appraisal by Trotti, and the other by Frank Geiger, which concluded the property was worth substantially less than $750 per acre. All of these appraisers and their respective appraisals are hereafter discussed in greater detail. The members of the Guion group then decided they no longer wished to abide by their agreement, and all but Louis I. Guion, III, returned the tendered deeds. Guignard, as trustee, then brought this action.

Members of the Guion group raise several questions on appeal. However, as they correctly point out in their brief, "The central issue, and the one around which all others revolve is, in a nutshell, value." They argue the agreement was unfair and should not be enforced because it was entered into based on the misrepresentation that Shuler Place was worth $750 per acre, as per the Trotti appraisal, when in fact its value was much less.

Because this is an equity matter in which the master and circuit judge concurred as to factual findings, our review is limited to determining whether those findings lack evidentiary support or are against the clear preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville*, 266 S. C. 81, 221 S. E. (2d) 773 (1976).

We find evidence from the record on which the findings by the master and circuit judge were based as follows:

Trotti testified that Guignard requested him to do appraisals on all but one of the Guignard properties in 1975 for estate planning purposes. At that time, Shuler Place consisted of 1572 acres which he appraised at $750 per acre as of July 31, 1975. (Of the original tract, approximately 950 acres are involved in this appeal.) Trotti further testified that since 1975, the real estate market had "gone down" and "gone back up."

Trotti described in detail how he arrived at the value of Shuler Place. He had worked with the Guignard properties, including Shuler Place, since 1946. At various times he had acted as a sales and rental agent for the Guignard family. His testimony revealed his extensive experience in the field of real estate appraisal since 1956. As to his qualifications, Trotti testified to the vast number of appraisals he had done throughout his career and the numerous appraisal courses he had taken in South Carolina, North Carolina and Georgia. He further testified as to his memberships and offices in various professional associations in the field, his designation as an Independent Fee Appraiser, Senior, his license as a South Carolina real estate broker, and his service as a member of the South Carolina Real Estate Commission.

Dodds testified he appraised Shuler Place as of May 1, 1979, and arrived at an average value of $725 per acre. (By then, Shuler Place had been reduced to 950 acres.) He testified in detail as to how he arrived at this value. He also testified he had headed his own appraisal firm since 1974 and was designated as a Member of the Appraisal Institute (M.A.I.). Dodds further testified concerning the appraisal courses he had taken and the offices and memberships he held in related professional associations.

Geiger testified he appraised Shuler Place in June or July 1979, at the request of a member of the Guion group and arrived at an average value of $471 per acre. He testified as to how he arrived at this value. It was apparent from his testimony that his appraisal methods were different from those of Trotti and Dodds. He had either not considered or had assigned a negative value to characteristics of Shuler Place which they had considered as advantages. Neither had he considered the sale of 16 acres of the tract to Lexington County School District No. 2 for $2,500 per acre or a recent

purchase of a large tract in Lexington County by the Michelin Corporation for $4,750 per acre. It further appeared from his testimony that he was not a member of any professional organizations relating to real estate appraisal, and his experience in the field did not equal that of either Trotti or Dodds.

Guignard testified he believed the Trotti appraisal reflected a fair value for Shuler Place and was aware of no problems with it.

According to the testimony of various members of the Guion group, they agreed to use the appraisals by Trotti for the purpose of the partition and never requested updated appraisals. William G. Guion testified he had no knowledge of evidence that Guignard had any information that Shuler Place had a value different than determined by the Trotti appraisal during the period partition was negotiated.[1]

In our opinion, this evidence supports the findings of the master and circuit judge that the agreement entered into between Guignard and the Guion group was fair and equitable, and these findings were not against the clear preponderance of the evidence.

We are not at liberty to substitute our findings of fact for those of the master and circuit judge but, instead, must apply the two-judge rule previously cited from *Townes*.

The members of the Guion group argue that we should not apply this rule because the circuit judge gave such a cursory review to the case. We reject this argument. The order of the circuit judge states he carefully considered the master's report, exceptions, transcript, exhibits and oral arguments. The mere length of his order does not justify our reaching the conclusion that he did not.

In dealing with beneficiaries, trustees must act in good faith to reach a settlement free of undue influence, concealments and misrepresentations. *Waldrop v. Leaman*, 30 S. C. 428, 9 S. E. 466 (1889). Transactions between a trustee and beneficiaries may be sustained where there is clear affirmative proof of fair consideration, perfect candor and absence of advantage. *In Re Gadsden*, 89 S. C. 352, 71 S. E. 952 (1911).

---

[1] Appellants do not accuse Guignard, who they affectionately refer to in their brief as "Uncle Sanders," of dishonesty.

As previously discussed, the record here contains evidence that the agreement between Guignard and the Guion group was fair and equitable. It therefore follows that the master and circuit judge were correct in sustaining this transaction.

The discretion to grant or refuse specific performance ■ is a judicial discretion to be exercised in accordance with special rules of equity and with regard to the facts and circumstances of each case. *Holly Hill Lumber Co., Inc., v. McCoy*, 201 S. C. 427, 23 S. E. (2d) 372 (1942). Under the facts presented here, the master and circuit judge appropriately exercised their discretion in granting specific performance.

Accordingly, the order of the circuit judge affirming the master's report is

Affirmed.

SHAW and BELL, JJ., concur.