603 S.E.2d 625

**Raymond C. CAMPBELL, Respondent,**

v.

**Martha M. CARR and Ruth Riley Glover, Appellants.**

No. 3867.

Court of Appeals of South Carolina.

Submitted Sept. 14, 2004.

Decided Sept. 27, 2004.

H. Ronald Stanley, of Columbia, for Appellants.

Thomas G. Earle, of Columbia, for Respondent.

ANDERSON, J.:

Martha M. Carr and Ruth Riley Glover appeal the master-in-equity's ruling of specific performance. We reverse.[1]

## *FACTUAL/PROCEDURAL BACKGROUND*

In 1996, Carr, a resident of New York, inherited from her mother a 108–acre tract of unimproved land. In 1998, Carr contacted the Campbells, who had leased the property for thirty years, about selling the property to them. Carr had

---

1. This case was decided without oral argument pursuant to Rule 215, SCACR.

telephone discussions with Betty Campbell. Carr asked Betty Campbell "how much the property went for." Betty Campbell told her the Tax Assessor's agricultural assessed value of the property was $54,000. On August 6, 1998, Carr and Raymond Campbell entered into a written contract for $54,000, which averaged $500 an acre. Raymond Campbell paid an earnest money deposit of $1000. Carr did not attend the closing because she felt the sales price was unfair. Carr returned the earnest money, but it was refused and returned to her. On February 9, 1999, Carr conveyed an undivided one-half interest in the property to her cousin, Ruth Riley Glover.

In 1998, the Richland County Tax Assessor had computed the fair market value of the property at $103,700. Raymond Campbell admitted he had probably seen the Tax Assessor's fair market value of the property:

[Appellants' counsel]: Do you know what the tax office is carrying as the market value of this property?

[Raymond Campbell]: Not right offhand, I don't.

[Appellants' counsel]: Have you ever seen that number?

[Raymond Campbell]: I probably have.

[Appellants' counsel]: Does a hundred and three thousand, seven hundred ($103,700) dollars sound right to you as what the tax offices carry?

[Raymond Campbell]: That might be.

[Appellants' counsel]: Did you tell Ms. Carr about the fair market value of the property that the tax office was carrying on that?

[Raymond Campbell]: I think my wife told her the agricultural value.

[Appellants' counsel]: Didn't tell her the fair market value?

[Raymond Campbell]: Not at the time, I don't think.

The opinion expressed in the lender's Collateral I.D. Report was that the property would have sold for twenty-five percent to forty percent higher than the Tax Assessor's fair market value in 1998. This would give the property an expected sell-value of $129,625 to $145,180.

Boston McClain, who was qualified by the trial court as an expert real estate appraiser, found that the property had a

fair market value of $162,000, or $1500 an acre, when the contract was executed.

Prior to entering into the contract, Carr had only seen the property once when she was a child: "I had seen it as a child, and it was a long time ago. My parents drove down to South Carolina." Carr was diagnosed as having schizophrenia and depression in 1986. She has been on Haldol and Cogentin for her mental illnesses since 1986. At the time she entered into the contract, she was taking ten milligrams of Haldol and five milligrams of Cogentin. She has been hospitalized five or six times for depression and schizophrenia.

Schizophrenia is a psychotic disorder, which is characterized by disturbances in perception, inferential thinking, language and communication, behavioral monitoring, affect, fluency and productivity of thought and speech, hedonic capacity, volition and drive, and affection. *Diagnostic and Statistical Manual of Mental Disorders: DSM–IV* 274 (4th ed. 1994). The symptoms of schizophrenia are delusions, hallucinations, and grossly disorganized or catatonic behavior. *Id.* at 275. "Disorganized thinking ('formal thought disorder,' 'loosening of associations') has been argued by some (Bleuler, in particular) to be the single most important feature of Schizophrenia." *Id.* at 276. Depression is characterized by altered mood in which there is a loss of interest in all usually pleasurable outlets. *Taber's Cyclopedic Medical Dictionary* 478 (16th ed. 1989). Some of the symptoms of depression are: loss of interest or pleasure in usual activities, feelings of worthlessness, self-reproach, or excessive or inappropriate guilt, and complaints of or evidence of diminished ability to think or concentrate. *Id.*

Raymond Campbell brought this action against Martha Carr and Ruth Riley Glover seeking specific performance of a land contract entered into between Campbell and Carr. The master-in-equity tried the case without a jury and ordered specific performance of the contract.

## *STANDARD OF REVIEW*

An action for specific performance is one in equity. *Lewis v. Premium Inv. Corp.,* 351 S.C. 167, 170 n. 2, 568 S.E.2d 361, 362 n. 2 (2002); *Wright v. Trask,* 329 S.C. 170, 176,

495 S.E.2d 222, 225 (Ct.App.1997). In an action in equity, tried by the judge alone, without a reference, on appeal the appellate court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence. *Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976). "It is now well settled that this court has jurisdiction in appeals in equity cases to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of a verdict by a jury; and may reverse a factual finding by the lower court in such cases when the appellant satisfies this court that the finding is against the preponderance of the evidence." *Crowder v. Crowder,* 246 S.C. 299, 301, 143 S.E.2d 580, 581 (1965).

### *LAW/ANALYSIS*

Carr and Glover argue that the master-in-equity should not have ordered specific performance of the contract.

"Specific performance should be granted only if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties." *Ingram v. Kasey's Assocs.,* 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000). Equity will not decree specific performance unless the contract is fair, just, and equitable. *Anthony v. Eve,* 109 S.C. 255, 263, 95 S.E. 513, 515 (1918); *McChesney v. Smith,* 105 S.C. 171, 176, 89 S.E. 639, 641 (1916). "The discretion to grant or refuse specific performance is a judicial discretion to be exercised in accordance with special rules of equity and with regard to the facts and circumstances of each case." *Guignard v. Atkins,* 282 S.C. 61, 64, 317 S.E.2d 137, 140 (Ct.App.1984); *accord Bishop v. Tolbert,* 249 S.C. 289, 298, 153 S.E.2d 912, 917 (1967) ("The rule is well settled that the granting of specific performance is not a matter of absolute right, but rests in the sound or judicial discretion of the Court, guided by established principles, and exercised on a consideration of all the circumstances of each particular case."). "Specific performance will not be ordered unless the contract expresses the true intent of the parties and is fair, just and equitable." *Amick v. Hagler,* 286 S.C. 481, 484, 334 S.E.2d 525, 527 (Ct.App.1985). "[S]pecific performance ... is only available to enforce a contract that is fair, just, and equitable."

*Hodge v. Shea,* 252 S.C. 601, 612, 168 S.E.2d 82, 87 (1969). "In order to compel specific performance, a court of equity must find: (1) there is clear evidence of a valid agreement; (2) the agreement had been partly carried into execution on one side with the approbation of the other; and (3) the party who comes to compel performance has performed his or her part, or has been and remains able and willing to perform his or her part of the contract." *Ingram,* 340 S.C. at 106, 531 S.E.2d at 291. "Mere inadequacy of consideration is not a ground for refusing the remedy of specific performance; in order to be a defense, the inadequacy must either be accompanied by other inequitable incidents, or must be so gross as to show fraud." *Id.*

When the accompanying incidents are inequitable and show bad faith, such as concealment, misrepresentations, undue advantage, oppression on the part of the one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other,—these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative.

*Holly Hill Lumber Co. v. McCoy,* 201 S.C. 427, 442, 23 S.E.2d 372, 378 (1942). When a grossly inadequate consideration is combined with weakness of mind on the part of the seller, a denial of specific performance is warranted. *Craven v. Williams,* 302 F.Supp. 885, 893–94 (D.S.C.1969); *accord* 81 C.J.S. *Specific Performance* § 47 (1977) (stating that inadequacy of price combined with mental weakness tend to make a decree of specific performance inequitable). The inadequacy of price is determined at the date the contract was entered. *Adams v. Willis,* 225 S.C. 518, 527, 83 S.E.2d 171, 175 (1954); *Holly Hill Lumber Co.,* 201 S.C. at 445, 23 S.E.2d at 380; *Shannon v. Freeman,* 117 S.C. 480, 489, 109 S.E. 406, 409 (1921); 81 C.J.S. *Specific Performance* § 47 (1977).

The rule as to inadequacy of price as a basis for a denial of specific performance was early stated in the leading case of *Gasque v. Small,* (1848) 2 Strob.Eq. (21 S.C.Eq.) 72, 80, in these words: 'The inadequacy must not be measured by grains, but it ought to be palpably disproportioned to the real and market value of the property, so as to constitute a hard, unreasonable, and unconscionable contract; but it is

not necessary that it should be so gross as to excite an exclamation or to indicate imposition, oppression or fraud, for this would be sufficient ground not only for refusing a specific performance but for rescinding the contract.'

*Craven*, 302 F.Supp. at 892–93.

[I]t has been held that to warrant denial of specific performance, the consideration must be palpably disproportioned to the real and market value of the property so as to constitute a hard, unreasonable, and unconscionable contract, or so disproportionate to value as to offend the normal sense of fair dealing, but it is not necessary that the disparity be so gross as to excite an exclamation or indicate imposition, oppression, or fraud.

81 C.J.S. *Specific Performance* § 47 (1977).

In *Craven*, the judge found the value of the property was three times the amount stated in the contract.

The [prospective purchaser] was a lawyer of ability, with great knowledge of real estate values in the Lincolnville area based on extensive experience in that field, and in the full possession of his faculties. The [prospective seller], on the other hand, was advanced in years, living remote from the property involved, with access to no reliable information on value in the Lincolnville neighborhood, without any knowledgeable adviser so far as the record shows, and but shortly released from a mental institution, after some six or eight years of confinement.

*Id.* at 893. The judge concluded the prospective buyer was not entitled to specific performance because of the gross inadequacy of price coupled with the prospective seller's weakness of mind. *Id.* at 894.

 The consideration stated in the contract between Carr and the Campbells was inadequate. The $54,000 sales price in the contract was significantly below the appraised value of $162,000, the Collateral I.D. report's expected sell value of $129,625 to $145,180, and the Richland County Tax Assessor's fair market value of $103,700. This inadequate consideration combined with Carr's weakness of mind, due to her schizophrenia and depression, makes it inequitable to order specific performance. As in *Craven*, the Campbells, as the prospective purchasers, had greater knowledge of the real estate value of

the land, having leased the land for thirty years for personal hunting and farming purposes, compared with Carr, who lived in New York, had not visited the property since she was a child, and had no knowledge of the fair market value of the property. Additionally, Carr suffers from mental illness as the prospective seller did in *Craven.*

We find the contract price of $54,000 is inadequate consideration for the 108–acre tract of land. The inadequacy of consideration in addition to Carr's mental illnesses, make it inequitable to order specific performance.

## *CONCLUSION*

Accordingly, the decision of the master-in-equity is

**REVERSED.**

WILLIAMS, J., concurs.

GOOLSBY, J., concurs in a separate opinion.

GOOLSBY, J., (concurring):

Although I question whether the appellants Martha M. Carr and Ruth Riley Glover proved that, at the time the respondent Raymond C. Campbell contracted with Carr to purchase the land in question, Carr's mental illness affected her legal capacity to enter into that contract, I concur in the majority's decision to reverse the judgment below.

Rule 208(a)(4), SCACR, provides in part: "Upon the failure of the respondent to timely file a brief, the appellate court may take such action as it deems proper." This action includes reversing the judgment below. *Wierszewski v. Tokarick,* 308 S.C. 441, 418 S.E.2d 557 (Ct.App.1992).

Here, Campbell did not file a respondent's brief, notwithstanding substantial questions of fact and of law are involved, no small amount of money is at stake, and the case is one in which this court, because it is an action in equity, may take its own view of the preponderance of the evidence. *Townes Assocs. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976). In short, Campbell offers us nothing.

As in *Wierszewski,* this court should not be inclined to do what Campbell neglected to do, i.e., "search the record for

reasons to affirm." 308 S.C. at 444 n. 2, 418 S.E.2d at 559 n. 2; *cf. Smith v. South Carolina Dep't of Soc. Servs.*, 284 S.C. 469, 327 S.E.2d 348 (1985) (holding, under prior appellate court rules, the supreme court would not "grope in the dark" in order to identify errors).