# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Timothy J. Register, Appellant,

v.

Angel M. Register Dixon and Lee Dixon, Respondents.

Appellate Case No. 2019-000854

---

Appeal From Richland County
Michelle M. Hurley, Family Court Judge

---

Opinion No. 5938
Heard March 9, 2022 – Filed August 10, 2022

---

## REVERSED AND REMANDED

---

Carrie Ann Warner, of Warner Law Firm, LLC of
Columbia for Appellant.

Angel M. Register Dixon and Lee Dixon, pro se.

---

**GEATHERS, J.:** In an appeal from the family court following a contempt proceeding, Appellant Timothy Register ("Register") asks this court through its *de novo* review authority to find that Respondent Angel Dixon ("Angel") did not meet her burden of proof regarding child support payments. Further, Register argues that Angel should be required to reimburse him for all his attorney's fees and costs in connection with the contempt proceedings. We reverse and remand for further contempt proceedings consistent with this opinion.

# FACTS/PROCEDURAL HISTORY

Register and Angel were formerly husband and wife, and they are the biological parents of one minor child (E.R.). Register and Angel obtained a Decree of Divorce on February 19, 2014, and Angel is now married to Respondent Lee Dixon ("Lee," collectively, "the Dixons").

On November 24, 2015, Register was the subject of a finding of a substantial risk of sexual abuse upon E.R. from the Department of Social Services ("DSS") based upon allegations made by Angel. Register appealed the finding within DSS on December 28, 2015, and was subsequently notified that DSS was suspending his right to file an appeal due to a contested action it had filed in the family court.[1]

On April 26, 2016, Register filed an action against Angel and DSS for post-divorce modification of custody and/or visitation, seeking an order for custody of, or in the alternative, liberal visitation with, E.R., child support, attorney's fees and costs, and related relief. Angel never filed a responsive pleading. DSS filed a Complaint for Intervention against Register that included two hearing notices for hearings scheduled in June and July 2016. On June 17, 2016, a Temporary Order was issued by Judge Michelle Hurley continuing the DSS hearings regarding Register and ordering DSS to grant Register an administrative hearing on his appeal. Pending the disposition of Register's appeal, the Temporary Order granted him supervised visitation with E.R., utilizing an independent supervisor,[2] and appointed Jacqueline Draper as Guardian ad Litem.

On July 8, 2016, Register filed a Motion for Joinder of Third Party Defendant seeking to add Lee Dixon as a party to his custody action.

Following a hearing before an Administrative Officer, a Final Administrative Order was issued on October 18, 2016, dismissing the DSS case against Register and questioning Angel's credibility in light of the contradictory reports made by E.R.

In the custody action, Judge Dorothy M. Jones issued an order on April 20, 2017, that required the immediate transfer of custody of the minor child to Register, granted Angel supervised visitation for a period of 30 days, added Lee as a party, and granted Register attorney's fees and costs totaling $2,455.00.

---

[1] The record does not specify the nature of that contested action.
[2] The parties were ordered to equally divide the cost of the supervisor.

Following a two-day hearing, a Final Order was issued by Judge Jones on January 16, 2018. That order granted continued sole custody to Register and required Angel to pay him $239.00 per month for child support. Angel was granted supervised visitation as well as limited unsupervised visitation, provided that "Lee Dixon shall not be present or in the vicinity of Ms. Dixon's visitation," and such visits last no longer than five consecutive hours. The order stated that "both [Angel and Lee Dixon] engaged in conduct intended to alienate E.R.'s trust and affection with [Register]," and discussed the "impropriety of Defendant Lee Dixon's conduct . . . and controlling behavior along with Defendant Angel Dixon's conduct," which "adversely affected the child's affection for her father." Moreover, the order granted Register an attorney's fee award of $17,500.00,[3] to be paid in a lump sum by the Dixons no later than March 2, 2018, by and through Register's counsel, Carrie A. Warner.

On November 8, 2018, Register commenced an action seeking a court order to hold Angel in willful contempt for failure to pay child support totaling $2,390.00 as of the date of filing. He also sought a court order to hold the Dixons in willful civil contempt for failing to pay his attorney's fees and costs totaling $17,500.00, as ordered in the January 16, 2018 Final Order.

A hearing was held in front of Judge Michelle Hurley on January 22, 2019, and judicial notice was taken of the January 16, 2018 Final Order. At that hearing, Register testified that since the Final Order was issued requiring Angel to pay child support, she did not make any payments toward her child support obligation. He also testified that he sought the payment of total attorney's fees plus judgment interest, alleging that the Dixons failed to pay the attorney's fees award. Register introduced into evidence a summary of the judgment interest owed on his attorney's fees, making the total amount of attorney's fees plus interest $18,841.03.

Prior to the hearing, Angel submitted to the court a financial declaration indicating that she had no income. During the hearing, Angel stated that she made

---

[3] Judge Jones found that the total fees and costs incurred by Register were "made necessary as a result of the actions of the [Dixons]" and "exceeded $40,000.00." However, she awarded Register only $17,500.00 in attorney's fees and costs, noting that "[w]hile this amount is not sufficient to adequately compensate [Register], it does take into consideration that the financial abilities of [the Dixons] are limited." During the pendency of this appeal, the Dixons satisfied the attorney's fees awarded in the original order by Judge Jones.

cash[4] payments totaling $2,315.00 towards the satisfaction of her child support obligation but indicated that she did not ask Register to sign receipts for the transactions. Angel further testified that she had no proof of the payments she allegedly made to Register and conceded the nonexistence of any supporting bank statements, cash withdrawals, or checks.[5] Angel did, however, testify that she created a list of the alleged cash payments made to Register, including the amounts, dates, and locations of the transactions.

The Dixons both testified that neither Angel nor Lee made any payments towards the attorney's fees as ordered.

At the conclusion of the hearing, the family court determined that Angel had made cash payments to Register totaling $2,315.00 and found that Angel owed Register only $553.00 in unpaid child support. As a result, the family court required Angel to pay $15.00 per month to Register, in addition to her court ordered child support amount, until the outstanding $553.00 was satisfied.

The family court also found the Dixons in willful contempt for not paying the attorney's fees award of $17,500.00, and sentenced them each to thirty days in jail, which could be purged upon their payment of $400.00 per month consecutively until the $17,500.00 was paid in full.[6] The Dixons were also ordered to pay $701.05[7] toward Register's attorney's fees and costs for the contempt proceeding ($1,402.01). Register's request for judgment interest was denied.

Register filed a Motion to Reconsider on March 12, 2019, which was subsequently denied. This appeal followed.

---

[4] At the hearing, Angel testified that she used cash from odd jobs to pay child support.

[5] Angel testified that Register did not accept her checks because he "did not want a check with [her] husband's name attached to it."

[6] In Register's initial appeal, he asserted that Judge Hurley erred by modifying the Final Order to allow for monthly payments rather than a lump sum payment, but on April 28, 2022, he submitted a Motion to Withdraw Ground for Appeal requesting to withdraw that issue from our consideration, and that Motion was granted.

[7] This amount is approximately one-half of Register's total attorney's fees regarding the contempt proceeding.

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In equity cases, the appellate court shall review findings of fact as well as law *de novo*. *Stoney v. Stoney*, 422 S.C. 593, 595, 813 S.E.2d 486, 487 (2018) (citing S.C. CONST. art. V, § 5)). Accordingly, "[o]n appeal from the family court, the appellate court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *S.C. Dep't of Soc. Servs. v. Polite*, 391 S.C. 275, 279, 705 S.E.2d 78, 80 (Ct. App. 2011). However, "this broad scope of review does not alter the fact that a family court is better able to make credibility determinations because it has the opportunity to observe the witnesses." *Wilburn v. Wilburn*, 403 S.C. 372, 380, 743 S.E.2d 734, 738 (2013). "Additionally, the de novo standard does not relieve the appellant of the burden of identifying error in the family court's findings." *Id.* "Accordingly, we will affirm the decision of the family court in an equity case unless its decision is controlled by some error of law or the appellant satisfies the burden of showing [that] the preponderance of the evidence actually supports contrary factual findings by th[e appellate] court." *Holmes v. Holmes*, 399 S.C. 499, 504, 732 S.E.2d 213, 216 (Ct. App. 2012).

## LAW/ANALYSIS

### I.     Burden of Proof

Register challenges the family court's finding that Angel met her burden of proof in showing that certain cash payments for child support were made to Register because, other than her testimony that she made the payments, she submitted no direct evidence in support of this contention. *See* ALEX SANDERS & JOHN S. NICHOLS, TRIAL HANDBOOK FOR S.C. LAW. § 10.1, at 391 (5th ed. 2021) ("Proof of facts is the soul of every trial. If there is no need to prove facts, then there is no need for a trial; the case presents only questions of law for the court.").

"Contempt results from the willful disobedience of a court's order." *Moseley v. Mosier*, 279 S.C. 348, 351, 306 S.E.2d 624, 626 (1983). There are two elements in proving contempt: (1) a court order and (2) voluntary disobedience of that order. *See id.* In child support issues, "[c]ontempt occurs when a parent ordered to pay child support voluntarily fails to pay." *Id.* However, "[w]hen a parent is *unable* to make the required payments, [she] is not in contempt." *Id.* In the context of civil contempt, an act is willful if it is "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Spartanburg Cnty. Dep't of Soc. Servs. v.*

*Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988) (quoting *Willful*, BLACK'S LAW DICTIONARY (5th ed. 1979)). Contempt must be proven by clear and convincing evidence, and the record must demonstrate the specific contemptuous act. *Ex parte Lipscomb*, 398 S.C. 463, 469, 730 S.E.2d 320, 323 (Ct. App. 2012); *Curlee v. Howle*, 277 S.C. 377, 382, 287 S.E.2d 915, 918 (1982). In a proceeding for contempt following the alleged violation of a court order, the moving party must show noncompliance, and the burden then shifts to the offender to establish his or her defense. *Brasington v. Shannon*, 288 S.C. 183, 184, 341 S.E.2d 130, 131 (1986).

In this case, Register testified that Angel had made no payments to him since the child support order was issued. Having shown Angel's noncompliance via sworn testimony, the burden then shifted to Angel to show by a preponderance of the evidence that she had in fact complied with the order. The only evidence upon which the family court relied was testimony from Angel that she paid Register child support in cash and a document written by Angel noting the amounts, dates, and locations of these alleged transactions. Angel alleged her cash payments to Register spanned from January 2018 to December 2018. Notably, in Angel's list of alleged cash transactions, she lists the first four transactions as: (1) January 27, 2018, $200.00 at the bowling alley; (2) February 11, 2018, $150.00 at the state museum; (3) March 4, 2018, $175.00 at the Columbiana movie theater; and (4) April 15, 2018, $200.00 at the Columbiana Mall. On April 19, 2018, Register's attorney sent Angel a letter informing Angel that she was four months delinquent in her child support payments to Register and indicating that no payments had been made at that time. In response to this letter, Angel sent Register's attorney an e-mail dated April 26, 2018, in which Angel stated: "I would like to make a payment arrangement with you for the fees owed. Please let me know how we can start this arrangement. Pertaining to *child support, I have attempted to pay* Mr. Register but he has made it difficult." (emphasis added). Angel stated that the reason for the failure of her attempt to pay Register was her inability to find him, as he had recently moved to a new home.

When juxtaposing the details of Angel's list of alleged cash payments to Register with the contents of her e-mail correspondence with Register's attorney, there are clear discrepancies. The most compelling of these discrepancies is that both the letter from Register's attorney and Angel's electronic correspondence are dated *after* the alleged inception of Angel's cash payments to Register. If these payments had been occurring as alleged in Angel's transaction list, we believe it is likely that Angel would not have stated she "attempted to pay" Register but would have stated that she *had paid* Register. Further, Angel's transaction list indicated that she met Register several times at various locations to pay him child support prior to the e-mail she sent to Register's attorney, but in the e-mail, Angel did not indicate

that she had seen or paid Register; rather, she indicated that she had been unable to find Register in order to pay him. These discrepancies cast doubt upon the legitimacy of Angel's list of alleged cash transactions. In the absence of *any* supporting evidence of these alleged cash transactions beyond Angel's own self-serving testimony, and pursuant to our authority to find facts in accordance with our own view of the evidence, we find Angel did not meet her burden of proving by a preponderance of the evidence that she made cash payments for child support to Register. *See Lewis*, 392, S.C. at 384, 709 S.E.2d at 651 ("In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence." (quoting *Easton v. Easton*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009))).

While this court normally defers to the family court's assessment of witness credibility, the April 26 e-mail put Angel's credibility on the witness stand in doubt. Our supreme court tells us that

> appellate court decisions have continued to reflect a preference to sustain a family court's factual findings.
>
> The highly fact-intensive nature of family court matters lends itself to a respect for the factual findings of our able and experienced family court judges who are in a superior position to assess the demeanor and credibility of witnesses. Indeed, life-altering credibility determinations often lie at the heart of family court factual findings. However, neither our respect for the family court bench nor the special need for finality in family court litigation may serve as a license to lessen our standard of review in family court appeals.

*Id.* at 390, 709 S.E.2d at 654.

While we generally defer to the family court in matters of evidence, we cannot do so automatically and blindly. *See id.* Indeed, we cannot lessen our standard of review by affording unlimited deference to the family court. Accordingly, this court may reverse factual findings made by the family court when the appellant satisfies this court that such findings are against the preponderance of the evidence. *Crowder v. Crowder*, 246 S.C. 299, 301, 143 S.E.2d 580, 581 (1965) (citing *Forester v. Forester*, 266 S.C. 311, 315, 85 S.E.2d 187, 188–89 (1954)).

Moreover, at the time of the hearing, the family court had already taken judicial notice of the January 16, 2018 Final Order, in which there are many adverse findings against Angel that call into question her candor and honesty to the court. Specifically, Angel's self-serving testimony, coupled with the unfounded and grave accusations against Register, call into question her credibility. Therefore, relying on Angel's testimony alone, without any corroborating evidence is not sufficient for a finding that payments were made. As a result, we reverse the family court's finding that Angel made cash payments for child support.

## II. Contempt Proceeding Attorney's Fees

Register argues that the family court erred by not requiring the Dixons to reimburse him for the entire amount of attorney's fees related to the contempt proceeding. We decline to address this issue.

Whether additional attorney's fees are due in this matter will depend on whether the family court finds Angel's failure to pay child support was voluntary. *See Moseley*, 279 S.C. at 351, 306 S.E.2d at 626 ("Contempt occurs when a parent ordered to pay child support *voluntarily* fails to pay." (emphasis added)). Therefore, this is an issue that must be addressed by the family court alone.

## CONCLUSION

We reverse the family court's finding that Angel Dixon made cash payments to Register for child support and remand for the family court's determination as to whether Angel's nonpayment was voluntary, and whether Register is entitled to additional attorney's fees.

**REVERSED AND REMANDED.**

**HILL, J. and LOCKEMY, A.J., concur.**