*New-London,*
July, 1846.

Eaton
*v.*
Whitaker.

EATON *against* WHITAKER :

IN ERROR.

The husband has such an interest in lands owned in fee by the wife, that he can give a lease thereof for a term of years, which will be valid, during the coverture at least; and an agreement to give such a lease, if not otherwise objectionable, may be enforced in a court of chancery.

*A*, having a freehold estate in a certain lot of land owned in fee by his wife, entered, in the fall of the year, into a parol agreement with *B*, that he, *A*, would erect upon such lot a substantial brick store, and have it completed by the 1st day of *April* then next; and that he would let such store to *B* for the term of three years from said 1st day of *April*, for the yearly rent of 500 dollars, to be paid quarterly. *A* erected such store, on said lot, pursuant to the agreement; and *B* immediately took possession of it and occupied it for one year, paying the stipulated rent quarterly. Before the expiration of this year, *A* gave *B* notice to quit possession, and brought summary process to get him out. *B* then sought the aid of a court of chancery to compel *A* to give him a lease of the premises, in conformity with the terms of the agreement. Held, 1. that the agreement was within that clause of the statute of frauds, which relates to the sale of lands &c. or an interest therein; 2. that here was a part performance, sufficient to take the case out of the statute, so as to authorize a court of chancery to decree the specific performance of it; 3. that the agreement was to be performed within one year, and consequently, was not within that clause of the statute which relates to agreements not to be performed within one year.

In such case, *B*, after the erection of the store and before the commencement of the suit, offered to *A* a writing in the form of a lease, to be executed by him, containing a clause, providing that in case the store should be destroyed by fire, or rendered unfit for use, the payment of rent should from that time cease, until it should be put in good order by *A* ; and thereupon *A* refused to execute such lease, or even to read it, saying, " I have no lease to execute ;" it was held, 1. that *A* was not bound to execute the lease offered, or any lease containing such a provision ; but 2. that this furnished no excuse to *A* for not executing a lease containing the usual provisions.

*It seems*, that *at law*, nothing short of a full and complete performance, by one party, of an agreement within the statute of frauds, will take it out of the operation of that statute.

THIS was a bill in chancery, brought by *Horace Whitaker* against *Giles M. Eaton*, for the specific performance of an agreement.

On the 1st of *September*, 1843, the defendant was, and ever since has been, seised and possessed, as of a freehold estate, for the life of his wife *Charlotte Isabella Eaton*, of a certain lot of land and a wharf appurtenant thereto, on *Commerce* street in the city of *Norwich*. In the fall of that

year, a parol agreement was entered into, between the parties *New-London,* to this suit, that the defendant should erect upon said lot of July, 1846. land a substantial brick store, suitable for the grocery busi- Eaton ness, and have it completed on or before the 1st of *April* *v.* then next; and that he should let such store and the wharf to Whitaker. the plaintiff, for the term of three years from said 1st day of *April*, at and for the yearly rent of 500 dollars, to be paid quarterly, with the privilege on the part of the plaintiff to occupy the same for two years next after the expiration of said three years, at the same rent, payable in the same man- ner. It did not appear, that there was any agreement between these parties, that a written lease of the premises should be executed, at any time, by the defendant, and deliv- ered to the plaintiff, unless such agreement may be legally inferred from the terms of the agreement above stated. In pursuance of this agreement, the defendant immediately there- after proceeded to erect, and did erect, said store upon said lot of land, and had it completed early in the month of *April,* 1844. On the 5th day of that month, the plaintiff took pos- session of the store and wharf under said agreement; and on the 1st day of *July* then next, paid to the defendant 125 dol- lars for the quarter's rent due on that day; for which the defendant gave the plaintiff a receipt. The plaintiff continued to make the several quarterly payments for the rent to the defendant, as they became due, up to the 1st day of *April,* 1845; receipts for which were given by the defendant to the plaintiff. In the month of *January,* 1845, the defendant no- tified the plaintiff by letter, that he (the defendant) intended entering into the possession and occupancy of said store, on the 1st day of *April* then next. On the 18th of *February,* 1845, the defendant, in pursuance of the provisions of the act entitled " an act prescribing a summary process to enable the owners of lands, houses and other buildings to recover pos- session," caused a notice in writing, under his hand, to be served upon the plaintiff, whereby he gave the plaintiff notice to quit possession of said land, store and wharf, on or before the 1st day of *April* then next. In the month of *March,* 1845, the plaintiff caused a writing, called an indenture of lease, to be drawn up, to be executed by himself and the defendant, in order to carry into effect the original agreement made between them in the fall of 1843; and the plaintiff presented

*New-London,*
*July, 1846.*

Eaton
*v.*
Whitaker.

such writing to the defendant, and demanded of him an execution thereof on his part; but the defendant refused to execute it, or even to read it, saying, " I have no lease to execute." The writing referred to, was in the form of an indenture bipartite, leasing the store, the land on which it stands and the wharf, to the plaintiff, for the term of three years from the 1st day of *April,* 1844, and for the further term of two years after the expiration of the three years, if the plaintiff should so elect, for the sum of 500 dollars *per annum,* payable in equal quarter-yearly payments. It contained a stipulation, on the part of the plaintiff, that in case of his failure to pay the rent, as it became due, to deliver to the defendant quiet and peaceable possession of the premises. It also embraced the following provisions: That in case said store should be destroyed by fire, or rendered unfit to be used, the plaintiff should cease to pay rent from that time until the store should be put in good order and condition, by the defendant; and that the plaintiff would give the defendant peaceable possession of the premises, at the expiration of the lease, and leave them in good condition, common wear and use excepted. There was no other request, made by the plaintiff of the defendant, to execute to him a written lease of the premises; nor has the defendant ever offered to the plaintiff a written lease thereof.

On the hearing before the committee, the defendant objected to all the evidence offered by the plaintiff to prove the agreement made in the fall of 1843, because it was not in writing, and because it was not, by the terms of it, to be performed within one year from the making thereof. The committee received the evidence, subject to the opinion of the court thereon in regard to its admissibility.

The court adjudged the evidence to be admissible; and thereupon passed a decree in favour of the plaintiff for a specific performance of the agreement on the part of the defendant. To revise this decision, the defendant brought the record before this court, by motion in error.

*Strong*, for the plaintiff in error, contended, 1. That the title to the lot in question being in *Eaton's* wife, he had no such estate in the premises as would authorize him to give the lease asked for. Under these circumstances, even were he liable in damages for not performing his contract, a court of

equity would not decree that he should execute the lease. A court of equity will not decree the specific performance of a contract, which, from the nature of the case, the party cannot perform. *Annan* & al. v. *Merritt*, 13 *Conn. R.* 478. 487. Here, the interest of *Eaton* was an uncertain one, dependent upon the life of another.

*New-London*, July, 1846.

Eaton
*v.*
Whitaker.

2. That *Eaton* was under no legal obligation to perform the agreement in question, being protected by the statute of frauds—this being a " contract for the sale of lands &c. or an interest in or concerning them," and also " an agreement not to be performed within one year from the making thereof," and neither " such contract or agreement," nor any " note or memorandum thereof," being " made in writing." *Stat.* 299. *tit.* 39. *s.* 1. (ed. 1838.) corresponding to the *English* statute of 29 *Car.* II. *c.* 3. *s.* 4. This case is within the letter and the spirit of both clauses of the statute ; a statute made for wise reasons. Many of its barriers have already been broken down, much to the regret of eminent jurists in *Great-Britain* and in this country. This court will not be anxious to demolish any more.

It will be claimed, that the case is taken out of the statute, by part performance. The case, it is to be borne in mind, is within two distinct clauses of the statute ; and it must be taken out of *both*, or the suit cannot be sustained. But as to contracts not to be performed within one year, part performance by the plaintiff does not take the case out of the statute as against the other party who has done nothing. *Boydell* v. *Drummond*, 11 *East*, 142. 156. *Comes* v. *Lamson*, 16 *Conn. R.* 246. 250, 1. *Bracegirdle* v. *Heald*, 1 *Barn. & Ald.* 726. Part performance of a contract not to be performed within a year, does not prevent the evil which the legislature meant to guard against, that of leaving to uncertain memory, for so long a period, the terms of the contract.

3. That *Eaton*, at any rate, was under no obligation to execute the lease which was tendered to him for execution, because it contained provisions not authorized by the agreement or general usage ; and it does not appear that he has ever been requested to execute any other lease.

*Foster* and *E. Perkins*, for the defendant in error, contended, 1. That though the agreement in question was a parol

agreement, yet under the circumstances of the case, the original plaintiff was entitled to a decree of specific performance. In the first place, it may be remarked, that though the exercise of the power of a court of equity to compel the specific execution of contracts, is a matter of discretion in the court, yet this discretion is not arbitrary and capricious, but subject to the established rules of equity. *Meeker* v. *Meeker*, 16 *Conn. R.* 408. 2 *Sw. Dig.* 16. 2 *Sto. Eq.* 53. Secondly, when the contract respects real estate, and is in its nature and terms unobjectionable, and is in writing, it is as much a matter of course for a court of equity to decree a specific performance, as it is for a court of law to give damages for the breach of it. Thirdly, it is equally a matter of course for a court of equity to decree the specific execution of a similar contract by parol, when it is so far in part performed as by the established rules of equity to be taken out of the operation of the statute of frauds. *Downey* v. *Hotchkiss*, 2 *Day* 225. 3 *Wooddes. Lec.* 255. *Crocker* v. *Higgins*, 7 *Conn. R.* 342. 2 *Sto. Eq.* 751. 759. 1 *Fonb. Eq.* 172. Fourthly, this contract is unobjectionable in its terms, and is so far in part performed as to entitle the plaintiff to the relief sought. 3 *Wooddes. Lec.* 254. and cases there cited. 2 *Sto. Eq. s.* 763. 4 *Kent's Com.* 451. *Earl of Aylesford's case*, 2 *Stra.* 783. *Morphett* v. *Jones*, 1 *Swanst.* 172. 181. & seq. *Wills* v. *Stradling*, 3 *Ves.* 378. 382. 18 *Ves.* 328.

2. That the plaintiff is not precluded from the relief sought, by the statute of frauds. In the first place, the agreement is not within that clause of the statute which relates to agreements not to be performed within one year. That clause has no reference to agreements for the sale of *lands*, &c. But if it has, to bring the agreement within it, it must appear from the express terms, that it is not to be performed within one year. *Russell* v. *Slade & al.*, 12 *Conn. R.* 455. 460. *Donellan* v. *Read*, 3 *B. & Adol.* 899. (23 *E. C. L.* 215.) Here, the lease was to be given and possession delivered *within* the year. But secondly, if the agreement was within the statute, it has been taken out of it, by part performance. The mere delivery of possession, is such a part performance as takes the case out of the statute. *Waggoner* v. *Peck*, 3 *Ohio R.* 292. *Moore* v. *Beasley, Id.* 294. *Earl of Aylesford's*

New-London,
July, 1846.
———
Eaton
v.
Whitaker.

case, 2 *Stra.* 783. and n. 1. *Morphett* v. *Jones,* 1 *Swanst.* 172. 181. & seq. and the other authorities above referred to.

3. That the defendant has such an interest in the premises as will enable him to give the stipulated lease. He has an estate for the life of his wife, and perhaps for his own life. If he cannot give a lease for three years, who can ? Surely, not the wife. In 4 *Bac. Abr.* 13. *tit.* Leases &c. C. 1. (*Gwil.* ed.) it is laid down as clear law, that if a husband seised of lands in right of his wife, make a lease thereof by indenture or deed poll, reserving rent, this is a good lease for the whole term, unless the wife, by some act after the husband's death, shows her dissent thereto. *Jordan* v. *Wikes, Cro. Jac.* 332. is a strong case in support of the same doctrine. There, the husband, who claimed the land in right of his wife, made a lease thereof for five years, and afterwards died ; and the court held, not only that the lease was valid during his life, but that, as the wife had not entered after his death, it was not, even then, determined or void. The case of *Annan* & al. v. *Merritt* goes wide of this. There the contract was, to convey the wife's land in fee, (not merely the husband's interest in it,) with full covenants ; and the bill was against the husband *and wife*. The court said, they would not enforce the contract *against her*.

4. That if the defendant did not like the lease which was prepared for him, it was his duty to draw and execute a proper one. His objection, at the time, was not that the writing offered to him contained improper or unusual provisions, but that he *had no lease to execute*. He refused to execute *any* lease.

HINMAN, J. In order to show that the decree of the superior court is erroneous, the defendant relies, first, upon the fact found by the committee, that the estate which was the subject matter of the agreement, belonged to the defendant's wife, he having in her right an estate during coverture, or at most, only a life estate in it. And the claim is, that a husband has no power to lease for a term of years the estate of his wife ; and therefore, ought not to be compelled specifically to perform his agreement to lease it ; and we are referred to the case of *Annan* v. *Merritt,* 13 *Conn. R.* 457. as supporting this claim.

If the claim of the defendant was correct, that a husband is incompetent to lease estate in which his only interest is such as the law gives him in right of his wife, it would doubtless follow, from the case cited and the authorities referred to in that case, that he would not be decreed to execute a contract to lease it.   But we see nothing in that case that countenances the idea, that he cannot make a valid lease of his wife's real estate.   We did not suppose, that the rights acquired by marriage, had been varied, or in any way modified, by that decision.   That he cannot convey her interest in land, is very true ; and so the law has always been ; for the obvious reason, that he can convey only such interest as he himself has in it ;   and the case cited shows, that the former practice of courts of chancery, of compelling him to cause or procure the title of his wife to be conveyed to his vendee, upon the presumption that he must have had her consent previous to the sale, is now exploded.   But we know of no law that will prevent his selling his own interest in land, however acquired. And as the law gives him an estate during coverture, and in some cases a life estate, he can of course convey it.   And although it seems to be a disputed point, whether, if he lease for a term of years, and die during the term, the lease is wholly void as against the wife, or good for the whole term, unless she, after such decease, dissent to it ; yet, it is nowhere said, that it will not be good during the husband's life.   In *Bac. Abridg. tit.* Lease. C. 1. it is said, it will be good for the whole term, unless she, by some act after the husband's decease, shows her dissent to it ; and that if she accepts rent after his decease, the lease becomes absolute for the whole term.   *Williams*, in a note to *Wotton* v. *Hele*, 2 *Saund.* 180. n. 9. doubts whether the lease is not wholly void as to the wife ; but he says, it is undoubtedly good during the coverture.   The defendant's lease, then, will be good for the whole term, unless previously determined by his death ; and whether it is wholly void as to his wife, or only voidable, is of no importance in this suit.

2. It is insisted, that the agreement was within the provisions of the statute of frauds ; and that there has been no such part performance as will take it out of the operation of that statute.

The first part of this proposition cannot be denied.   It was

*New-London,*
*July,* 1846.
___
Eaton
*v.*
Whitaker.

an agreement to build, by a specified time, a store, and when finished, to rent it, together with an adjoining wharf, to the plaintiff, for the period of three years, at the rate of 500 dollars annual rent. As such it was obviously a contract for the sale of an interest in lands ; and not being in writing, was within the express provision of one clause of the statute. This is not denied, but the plaintiff admits, that had nothing been done in part performance of the agreement, it would not have been binding, either at law or in equity. He however insists, that there has been such part performance that the parties are not now at liberty to say they will not execute it ; and this is our opinion. There is now, we believe, no dispute, any where, but that part performance of a parol agreement to sell land, will, in certain cases, take the agreement out of the operation of the statute of frauds, and authorize a court of chancery to decree the specific performance of it: as remarked by the Chief Justice, in the case above referred to, " The authorities are too numerous and too overpowering for us to treat this as an open question." But the difficulty is, to determine what ought, for this purpose, to be considered part performance of an agreement. Delivery of possession, accompanied by the expenditure of money upon the property by the purchaser ; as his building a house, or making other improvements upon it, which he must lose, unless the agreement is executed, has always entitled a purchaser to a specific execution. 2 *Sw. Dig.* 32. 2 *Sto. Eq. s.* 761. Formerly, it is said, the payment of a considerable part of the purchase money was held to be sufficient for this purpose. But the difficulty of determining what was meant, by a considerable part of the purchase money, and the fact, that it could be recovered back at law, on the ground of a failure of consideration, has induced the courts to abandon this, as alone sufficient to relieve from the operation of the statute. But the elementary books all lay down the proposition, that delivery of possession is part performance. *Pow. on Cont.* 294. 2 *Sw. Dig.* 30. *Newl. Cont.* 183. 2 *Sto. Eq.* 763. And we know of no decision to the contrary. Chancellor *Kent* says, " Generally, it may be observed, delivery of possession is part performance ;" (4 *Kent's Com.* 451.) And among the cases to which he refers in support of the proposition, is the Earl of *Aylesford's* case, 2 *Stra.* 783. which is so directly in point, that if it is regarded

*New-London,*
July, 1846.

Eaton
*v.*
Whitaker.

as law, it must controul our decision.    In that case, there was a parol agreement for a lease for twenty-one years ; the lessee had entered and enjoyed the premises six years.    The bill was brought by the lessor, to compel the lessee to execute a counterpart to the lease, for the residue of the term.    The defenfendant pleaded the statute of frauds ; but the plea was overruled, on the ground of part performance.    That case seems to be exactly like this, in all respects, except that the bill was brought by the lessor ; and in this case, it is brought by the lessee.    But this is an answer to the suggestion of counsel, that there was no mutuality in compelling the defendant to execute this agreement.    Undoubtedly, the obligation to perform should be mutual ; but the case referred to shows that it is so.    Had the plaintiff refused to take a lease, after he had induced the defendant to expend his money in erecting the store, and after possession had been taken and retained for nearly a year, upon the faith of the agreement, it would have been a most palpable fraud upon the defendant ; and if, as counsel correctly claim, the obligation must be mutual, we do not see how it can be any less a fraud on the part of the defendant, for him, under the same circumstances, to refuse to give a lease.    There is great uniformity in the numerous cases on this subject ; but a review of them is unnecessary.    The whole law applicable to the case was correctly laid down, in *Morphett* v. *Jones*, 1 *Swanst.* 172.    That was also the case of an agreement for a lease for years ; the lessee had entered, and before any lease was given, there was a subsequent agreement, by which part of the land was given up, and the lessee continued in possession of the residue at a reduced rent. The bill prayed, that the agreements, so far as the former was not altered by the latter, might be performed.    In his opinion, the master of the rolls, after stating, that the ground of relief, in such cases, is fraud, says : " A party who has permitted another to perform acts on the faith of an agreement, shall not insist that the agreement is bad, and that he is entitled to treat these acts as if it had never existed.    That is the principle ; but the acts must be referable to the contract.    Between landlord and tenant, when the tenant is in possesion at the date of the agreement, and only continues in possession, it is properly observed, that in many cases, that continuance amounts to nothing : but admission into possession, having unequivocal

reference to a contract, has always been considered an act of part performance. The acknowledged possession of a stranger, in the land of another, is not explicable except on the supposition of an agreement; and has, therefore, constantly been received as evidence of an antecedent contract, and is sufficient to authorize an enquiry into the terms; the court regarding what has been done as a consequence of contract or tenure."

In the case before us, there was both the delivery of possession and a continued occupancy of the premises for nearly a year, and also the payment of rent, according to the terms of the agreement; and although payment of the consideration is not, according to modern authorities, alone sufficient to take the case out of the statute, it at least strengthens the equitable claim of the plaintiff, arising from delivery of possession. *Church* v. *Sterling*, 16 *Conn. R.* 388.

But again, it is said, this agreement was not to be performed within one year from the making of it; and part performance will not relieve the case from this clause of the statute; and cases at law are referred to, in support of this claim. As the agreement was, as already remarked, within the clause of the statute relating to the sale of lands, we do not see how it could be affected, by being brought within another provision of the same statute. We suppose, also, that the specific performance of contracts is entirely a matter of equitable jurisdiction; and that, at law, nothing will take a case out of the operation of the statute; unless, perhaps, complete and full performance, by at least one party to the contract. We are aware of a class of cases, where one of the parties, having performed his part of the agreement, may bring a suit at law, and recover the consideration promised for such performance. Such was the case of *Baxter* v. *Gay* & ux. 14 *Conn. R.* 119. But we know of no case, where a party has been permitted to recover, at law, for the breach of a contract which was within the statute, on the ground of part performance. The remedy has always been in chancery for a specific execution; and relief is granted there, upon the principle, that at law, the other party has obtained an unfair advantage, which would operate as a fraud, unless the agreement is carried into effect. Hence, when it was suggested, in argument, in *Jackson* d. *Smith* v. *Pierce*, 2 *Johns. R.* 221. that the construction of the

statute of frauds, as to part performance, was the same in a court of law as in equity; we find *Kent*, J. replying, that "there was such a *dictum* of Justice *Buller* while sitting in the court of chancery; but it has never been regarded as law. And *Boyce*, J., in *Squires* v. *Whipple*, 1 *Verm. R.* 73. says, " A doubt may well be entertained, whether part performance is not exclusively a ground of equitable jurisdiction." If this suggestion is well founded, it follows, that the cases cited, being all actions at law, have no application to the case under consideration. However this may be, we do not place the case upon this ground; because we are satisfied that this agreement was to be performed within a year.

It is claimed, that it was not to be performed within that time, because the plaintiff was to enjoy the premises for the term of three years, at least. There are many cases, where contracts for the absolute sale of the fee of lands have been decreed to be executed, on the ground of part performance; and it would seem not a little remarkable, for a court to hold, that a contract for a three years' lease is, in this respect, in a worse condition than would be the sale of the land in perpetuity. But several of the cases cited by the plaintiff, are cases where there was an agreement for a term of years; and in none of them was this claim made. The contract in these cases, is not for the occupation of the land, any more in the case of a lease for years than in the absolute sale of it. It is for the sale of the term; and the contract is performed, when the title is conveyed. In this case, the contract, made in the fall of the year, was to be performed the succeeding *April*. The report of the committee finds the contract to have been, on the part of the defendant, that he should erect, on said lot of land, a substantial brick store, suitable for the grocery business, and have it completed on or before the 1st of *April* then next, and that he should rent or let the said store and wharf to the plaintiff, for the term of three years from the said 1st of *April*, at and for the yearly rent, &c. Substantially, this was an agreement to make a lease on the 1st of *April*, after he had erected the store, upon the usual terms. The due execution of such a lease, and of a counterpart on the part of the plaintiff, would have been a complete execution of the agreement. The occupancy of the store, and the consequent payment of rent, would have followed, not from the

original agreement, but from the lease and the occupation under it.

<em>New-London,</em><br>July, 1846.<br><br>Eaton<br><em>v.</em><br>Whitaker.

In the lease offered by the plaintiff to the defendant to execute, there was a clause providing, that in case the store should be destroyed by fire, or rendered unfit to be used, the payment of rent should, from that time, cease, until it should be put in good order, by the defendant. There was no proof of any such agreement, in regard to the terms of the lease ; and however equitable such a provision might have been, we have no power to prescribe any but the usual terms, for instruments of this description. We do not understand this to be one of them. The defendant was not, therefore, bound to execute the lease containing this provision. But, as he refused to execute any lease, or even to read the instrument presented to him, he can take no advantage of this provision, but must be decreed to execute a lease, containing the usual provisions.

Upon the whole, there was no error in the proceedings of the superior court.

In this opinion the other Judges concurred.

Decree affirmed.