0978

Wayne W. GIBSON and Jack Carter Durham, Plaintiffs v. Jim HRYSIKOS, Defendant. COLLINS MUSIC/Freddy Collins, David Foshee/Agent, Appellants v. Wayne W. GIBSON, d/b/a Kwik Chek, 210 Donaldson Rd., Respondent.

(358 S. E. (2d) 173)

Court of Appeals

*O. W. Bannister, Jr.,* Greenville, *for appellants.*

*G. Maurice Ashmore,* Greenville, *for respondent.*

*Demetrie J. Liatos,* Greenville, *for defendant.*

Heard May 20, 1987.

Decided June 22, 1987.

CURETON, Judge:

Wayne Gibson and Jack Durham, doing business as Kwik Chek, commenced this suit to enforce specific performance of an oral lease of a building owned by Jim Hrysikos. The circuit court consolidated this suit with an action brought by Collins Music in Magistrate's Court to eject Gibson and Durham from the premises, claiming it was the lessee. The trial judge found Hrysikos had given an oral lease to Gibson and Durham and ordered him to execute a written lease in accordance with the agreed terms shown at trial. The judge dismissed Collins' ejectment action with prejudice. Collins appeals the trial court's finding of an enforceable lease agreement between Hrysikos and Gibson and Durham.[1] We affirm.

---

[1] No one questions whether or not Collins has standing to maintain this appeal because it failed to appeal the dismissal of its ejectment action.

The Kwik Chek operated by Gibson and Durham was originally owned by Jim and Frankie Rogers. Mrs. Rogers is Durham's sister. The business is operated in a building owned by Hrysikos. The Rogers obtained a five year lease of the building from Hrysikos in 1982. Under the terms of their lease, the first year's rent was $550.00 per month, the second year's rent was $600.00, and the remaining three years' rent was $650.00 per month. On May 30, 1985, the Rogers sold the Kwik Chek operation to Gibson and Durham for $25,000.00. The Rogers, Gibson and Durham all testified they met with Hrysikos in the middle of May to obtain his consent to lease the building to Gibson and Durham. They testified that he agreed, and stated that the new operators could continue under essentially the same terms as the Rogers lease, and that they could meet later to execute a new lease agreement. According to these parties, Hrysikos agreed to rent the building to Gibson and Durham for $650.00 per month for the first three years and for $675.00 per month for the next two years. According to Gibson, the parties also agreed to certain improvements to be made by him and Durham. Hrysikos claimed, however, that he met with the parties in February or March regarding a possible sale three to six months later, and merely agreed to meet with Gibson and Durham at a later time to negotiate a lease arrangement. He testified they never approached him again regarding a lease agreement. Gibson and Durham took possession of the premises in June 1985. They sent a check for $650.00 to Hrysikos, marked "For Rent Kwik Chek 210 Donaldson Road." Hrysikos negotiated this check.

On July 1, 1985, Hrysikos signed a lease with Collins for the building at a rental of $800.00 per month. This lease was recorded on July 3, 1985. The term of the lease was for five years, beginning August 1, 1985. On July 3, 1985, David Foshee, Vice President of Operations for Collins, informed Gibson that Collins had purchased the building from Hrysikos. Hrysikos confirmed this to Gibson. Gibson testified Collins subsequently refused to discuss lease terms, while Freddy Collins, President of Collins Music, testified Foshee notified Gibson and Durham four or five times that they had to contact him to arrange a lease agreement.

On July 9, 1985, Collins signed a beer permit application

for Gibson, falsely claiming to be the owner of the building. Gibson and Durham subsequently learned that Collins was allegedly a lessee, not the owner, of the premises. In September, Gibson and Durham obtained Hrysikos's signature as owner of the building on the permit application. The application states that he has rented the building to the persons shown on the application, Gibson and Durham. Hrysikos testified at trial that he thought Collins had perhaps sublet the building to Gibson and Durham.

On October 9, 1985, Collins brought an ejectment action against Gibson and Durham in Magistrate's Court. Gibson and Durham answered, denying Collins owned the property, and claiming they were entitled to possession and had been in possession since June 1, 1985, under the terms of an oral lease with Hrysikos. On October 15 Gibson and Durham commenced an action in circuit court against Hrysikos for specific performance of the oral lease. Hrysikos claimed the oral contract is invalid under the statute of frauds, and that the tenants had only a month to month lease. In response to a motion from Gibson and Durham, the ejectment action was transferred to circuit court and consolidated with the action for specific performance.

Following a trial, the circuit judge entered an order on May 28, 1986. He found that Hrysikos agreed to a new lease in the meeting with the Rogers, Gibson and Durham to substitute Durham and Gibson in the place of the Rogers as tenants upon the same terms, except for the increased rental amounts and extended term alleged in the complaint. The judge found that Hrysikos, by cashing the June rental check, ratified the new lease agreement. He found Gibson and Durham had made regular rental payments and improvements to the property in reliance on the oral agreement. The judge found Collins not entitled to eject Gibson and Durham from the property, and ordered Hrysikos to sign a lease for a term of five years beginning June 1, 1985, with the rental to be $650.00 per month for the first three years, and $675.00 per month for the remaining two years. Upon Hrysikos's failure to execute the lease, the judge directed the Clerk of Court for Greenville County to execute it. He dismissed Collins' proceeding with prejudice, and awarded costs to Gibson and Durham.

Collins appeals, arguing the judge erred in finding an enforceable lease agreement between Hrysikos and Gibson and Durham because there was no mutual consent to essential terms, and even if an agreement had been reached, it violated the statute of frauds. Under our statute of frauds as codified at Section 32-3-10, Code of Laws of South Carolina, 1976, no action shall be brought:

(4) To charge any person upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them; or

(5) To charge any person upon any agreement that is not to be performed within the space of one year from the making thereof;

Unless the agreement upon which such action shall be brought or some memorandum or note thereof shall be in writing and signed by the party to be charged therewith or some person thereunto by him lawfully authorized.

A parol agreement for the lease of land, or a parol agreement to execute a written lease of land, constitutes a transaction concerning an interest in land within the operation of the statute of frauds. *Palachucola Club v. Withington*, 159 S. C. 446, 157 S. E. 621 (1931); *Yacobian v. J. D. Carson Co., Inc.*, 205 S. W. (2d) 921 (Mo. App. 1947). Courts of equity will decree the specific performance of an oral agreement for acquisition of an interest in land, despite the statute of frauds, where sufficient part performance has occurred. *Scurry v. Edwards*, 232 S. C. 53, 100 S. E. (2d) 812 (1957); *White v. McKnight*, 146 S. C. 59, 143 S. E. 552 (1928); *Aust v. Beard*, 230 S. C. 515, 96 S. E. (2d) 558 (1957); *White v. Kinney*, 211 Ala. 624, 101 So. 426 (1924); *Kaybill Corp. Inc. v. Cherne*, 24 Ill. App. (3d) 309, 320 N. E. (2d) 598 (1974); *Last Chance Mining Co. v. Tuckahoe Mining Co.*, 202 S. W. 287 (Mo. App. 1918); *Shaw v. George*, 82 S. D. 62, 141 N. W. (2d) 405 (1966); 71 Am. Jur. (2d) *Specific Performance* Section 147 (1973). In order to compel specific performance, a court of equity must find: (1) clear evidence of an agreement; (2) that the agreement has been partly carried into execution on one side with the approbation of the other; and (3) that the party who comes to compel

performance has performed on his part, or has been and remains able and willing to perform his part of the contract. *Thomson v. Scott,* 6 S. C. Eq. (1 McCord Eq.) 32 (1825); *Scurry v. Edwards, supra.*

We agree with the trial judge that the evidence demonstrates the existence of an agreement between Gibson and Durham and Hrysikos. The Rogers, Gibson and Durham all testified the agreement was for a five year term at $650.00 per month for the first three years, to increase to $675.00 per month for the remaining two years to accommodate increases in taxes. The first month's rental payment for $650.00 was cashed by Hrysikos. These persons also testified Gibson and Durham were to operate under the same terms and conditions as the Rogers lease. Under the two years remaining on the Rogers lease, the monthly rental would be $650.00.

Collins argues on appeal that the court erred in finding an enforceable lease between Hrysikos and Gibson and Durham because it incorporated the Rogers lease which violated the statute of frauds. While it is apparently true that the written lease between Hrysikos and the Rogers was never signed, Hrysikos admitted the lease agreement several times in his testimony. He stated that he would never have considered suing the Rogers because "I agreed to them people, and well I have drawn that contract up, regardless we ever executed or not, the contract was there." In response to the question whether he was prepared to live by the unsigned, written lease, he responded, "Yes, sir," and further stated that the oral agreement was "good enough for me." In our opinion, Collins's argument at this point that the Rogers lease is invalid under the statute of frauds is specious. In any event, other evidence supported the existence of the agreement.

The trial judge apparently found that Gibson's and Durham's actions in making rental payments and improvements and maintaining equipment on the property, combined with Hrysikos's action of cashing the June rental check, constituted sufficient part performance. As we have previously noted, Gibson and Durham took possession of the property on June 1st, and remitted monthly rental checks thereafter to Hrysikos. The first rental check for June was cashed by

Hrysikos, while the remaining checks were retained and sent to Collins but not negotiated. Regarding improvements, Gibson testified that, subsequent to taking possession, they built a new bar, removed a wall, and purchased a new compressor for the beer cooler for a combined cost of approximately $1,700.00.

A party seeking to show part performance by possession and improvements must show acts which relate clearly and unequivocally to the agreement, exclusive of any other relation between the parties touching the agreement. *Aust v. Beard, supra.* Mere payment of all or a portion of the price is not of itself regarded as such part performance as will take the contract out of the statute. *Scurry v. Edwards, supra.* Taking possession and paying rent, however, in conjunction with other facts and circumstances, may constitute sufficient part performance to take the agreement out of the statute. *Young v. Neill,* 190 Or. 161, 220 P. (2d) 89 (1950); *Eaton v. Whitaker,* 18 Conn. 222 (1846); *see also, McMillan v. King,* 193 S. C. 14, 7 S. E. (2d) 521 (1940); *Watts v. Witt,* 39 S. C. 356, 17 S. E. 822 (1891) (payment plus possession may constitute sufficient part performance of a contract to convey land). Further, where payment of part of the price is accompanied by possession, acquired under the contract, and the party seeking to enforce the contract has made improvements, sufficient part performance may be found. *McCathern v. O'Donnell & Co.,* 181 S. C. 76, 186 S. E. 659 (1936); *Humbert v. Brisbane,* 25 S. C. 506 (1886). Factors such as change of possession and payment are not necessarily sufficient to avoid the statute, but are to be considered in connection with other facts and circumstances of the transaction in determining whether there has been such part performance as warrants relief from the statue. *Scurry v. Edwards, supra.*[2]

---

[2] We note that while some of these cases deal with sales of real property, not leases, it has been suggested that the rule of part performance applied to short term leases is not as strict as when applied to contracts of sale. *Anderson v. Collinson,* 300 Ill. App. 22, 20 N. E. (2d) 980 (1939). This is logical since, if an agreement to sell may be rescued from operation of the statute by the purchaser's going into possession and paying a part of the purchase money, a lesser estate would be also since the greater always includes the lesser. *Shakespeare v. Alba,* 76 Ala. 351 (1884).

In our opinion, Gibson's and Durham's acts of taking possession of the property on June 1st, consistently making rental payments which Hrysikos accepted and cashed in June and retained and sent to Collins for succeeding months, and otherwise treating the property as though they were operating under the terms of the lease, together with all the other circumstances of the transaction, constitute sufficient part performance to take the agreement out of the operation of the statute. *Id.*

Finally, Collins argues the court erred in ordering Hrysikos to execute a five year lease to Gibson and Durham because an oral agreement for the use of real estate for more than one year is void unless in writing, citing Section 27-35-20, Code of Laws of South Carolina, 1976. Counsel for Collins maintained at oral argument that this Code Section is separate from the statute of frauds, Section 32-3-10, and thus part performance cannot relieve Gibson and Durham from the operation of this statute. We reject this argument. In *Leventis v. Acciardo*, 256 S. C. 437, 182 S. E. (2d) 726 (1971), the Supreme Court held that the trial judge properly overruled a demurrer which set up this statute and Section 32-3-10 to bar a cause of action based on an oral five year lease. The Court held that whether the alleged contract was removed from the operation of the statute of frauds by virtue of part performance could properly only be determined after development of the facts at trial. Since we have previously held that the facts of this case demonstrate sufficient part performance to remove the agreement from operation of the statute of frauds, this argument is without merit.

For the reasons stated above, the judgment appealed from is

Affirmed.

GARDNER and SHAW, JJ., concur.