# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Robert G. Shirey, Respondent,

v.

Gwen G. Bishop, Cassandra Robinson, and TD Bank, N.A., Defendants,

Of whom Gwen G. Bishop and Cassandra Robinson are the Appellants.

Appellate Case No. 2017-001678

_____

Appeal From Newberry County
Samuel M. Price, Jr., Special Referee

_____

Opinion No. 5718
Heard February 3, 2020 – Filed April 22, 2020

_____

## AFFIRMED

_____

Jason Scott Luck, of Garrett Law Offices, of North Charleston, for Appellants.

Kyle B. Parker, of Pope Parker Jenkins, P.A., of Newberry, for Respondent.

_____

**GEATHERS, J.:** In this land-transaction dispute, Appellants Gwen G. Bishop and Cassandra Robinson (collectively "Appellants") challenge the order of the special referee, arguing that the referee erred in 1) finding Respondent Robert G. Shirey was entitled to specific performance; 2) setting aside the deed from Bishop to Robinson;

3) finding Shirey to be a bona fide purchaser; and 4) awarding Shirey attorney's fees. We affirm.

## FACTS

The property at issue in this case is located at 242 Power Station Road in Newberry County, tax map number 294-23 ("the Property"). For over thirty years, Bishop and her husband operated a grave digging and burial vault business from the Property. In 2010, Bishop's husband passed away, leaving Bishop to run the business by herself. Consequently, Bishop suffered from depression and anxiety and she ultimately determined that she did not want to continue operating the business.

On April 25, 2012, Bishop entered into a land sale contract with Robinson, her niece, to sell the Property ("the 2012 Robinson Contract"). Robinson agreed to purchase the Property by assuming Bishop's mortgage and making monthly payments in the amount of $2,080.77 until the mortgage was satisfied.[1] The contract provided that, "If Buyer does not pay payments on the note monthly, Seller has the right to declare Buyer in default of this Contract." The contract was never recorded.

In many ways this case arises out of what happened next. Although Bishop had agreed in 2012 to sell the Property to Robinson, sometime in late 2014 or early 2015, Bishop approached Shirey about purchasing the Property[2] and the two ultimately entered into a land sale contract on May 20, 2015 ("the Shirey Contract"). Shirey agreed to purchase the Property for $125,000 and tender earnest money in the amount of $1,000 to be paid upon the signing of the contract. The contract also included: 1) a provision requiring that the closing occur "no earlier than August 3, 2015[,] and no later than August 12, 2015," further indicating that time was of the essence; 2) a warranty provision representing that Bishop "ha[d] good and marketable fee simple title to the Property . . . and no person or entity claim[ed] any right of possession to all or any portion thereof . . ."; and 3) a provision requiring (a) a specific writing for the waiver of any provision and (b) a writing signed by both parties for any modification.

Shirey tendered a check for $122,976.92 and deposited it with his attorney's office on August 12, 2015. However, Bishop did not show up to the closing or otherwise tender a deed to Shirey. After it became apparent that Bishop was not

---

[1] TD Bank, the mortgagee, was not notified and did not consent to the assumption.
[2] Shirey owns two commercial parcels that bound the Property on two sides.

going to appear, Shirey's attorney called Bishop to ask if the closing period could be extended to August 13, 2015, and Bishop agreed to appear the next day for closing.

On August 13, 2015, Shirey arrived at his attorney's office but Bishop again failed to appear. Later that morning, Bishop's doctor sent a note to Shirey's attorney asking that Bishop be excused from the closing. However, that afternoon, Bishop entered into a second land sale contract with Robinson ("the 2015 Robinson Contract"). Pursuant to the contract, Robinson agreed to purchase the Property for $33,000[3] and assume the mortgage. Notably, the 2015 Robinson Contract included a provision absent from the 2012 Robinson Contract providing that "The seller also[] agrees to indemnify the Buyer of any and all issues and of illegality or fraud concerning this transaction." Additionally, Bishop executed a deed conveying the Property to Robinson, and Robinson recorded the deed the same day.

Shirey filed a complaint against Bishop on August 20, 2015, requesting specific performance of the Shirey Contract and attorney's fees. Bishop filed her answer on September 16, 2015. On October 8, 2015, after learning of the deed from Bishop to Robinson, Shirey filed a motion to amend his complaint to add TD Bank and Robinson as parties to the action. The motion was granted, and Shirey filed his amended complaint on February 16, 2016. TD Bank filed its answer on April 7, 2016, and Bishop and Robinson both filed their answers on April 25, 2016. Neither Bishop nor Robinson raised any affirmative defenses in their answers.

On February 23, 2017, the action was referred to the special referee, and the case was heard on March 22, 2017. The parties offered records, depositions, and testimony demonstrating that Robinson did not make all of the mortgage payments required by the 2012 Robinson Contract,[4] she made sixteen late payments, and she knew about the Shirey Contract prior to August 13, 2015, the date of the Shirey closing. Additionally, Bishop testified that she forwarded all of her mortgage statements to Robinson and did not understand what she was signing when she signed the 2015 Robinson Contract.

On May 18, 2017, the special referee entered an order in favor of Shirey, setting aside the deed to Robinson, ordering specific performance of the Shirey Contract, and awarding Shirey attorney's fees. The special referee further

_____

[3] Robinson testified that the $33,000 purchase price was equal to the amount of mortgage payments she had made under the 2012 Robinson Contract.

[4] Bishop resumed making the mortgage payments after Robinson made her last payment in August 2013. Appellants testified that these payments served as Bishop's rent for occupying the premises, but such an agreement was never reduced to writing.

determined that 1) Shirey was a bona fide purchaser who took free of any interest Robinson might have in the Property; 2) Robinson and Bishop were in a confidential relationship; 3) the phone call from Shirey's attorney to Bishop was tantamount to an extension of the contract; and 4) Bishop's entering into the Shirey Contract demonstrated an intention to hold Robinson in default of the 2012 Robinson Contract. Appellants filed a motion for reconsideration, which was denied by the special referee on July 28, 2017. This appeal followed.

## ISSUES ON APPEAL

1. Did the special referee err in finding that Shirey was entitled to specific performance?

2. Did the special referee err in setting aside the deed from Bishop to Robinson?

3. Did the special referee err in finding Shirey to be a bona fide purchaser?

4. Did the special referee err in awarding Shirey attorney's fees?

## STANDARD OF REVIEW

An action for specific performance and an action to set aside a deed are both matters in equity. *Bullard v. Crawley*, 294 S.C. 276, 278, 363 S.E.2d 897, 898 (1987); *Campbell v. Carr*, 361 S.C. 258, 262, 603 S.E.2d 625, 627 (Ct. App. 2004). "In reviewing a proceeding in equity, this court may find facts based on its own view of the preponderance of the evidence." *Greer v. Spartanburg Tech. Coll.*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct. App. 1999). However, "[t]his broad scope of review does not require this court to ignore the findings below when the [referee] was in a better position to evaluate the credibility of the witnesses." *Id.*

"The review of attorney fees awarded pursuant to a contract is governed by an abuse of discretion standard." *Raynor v. Byers*, 422 S.C. 128, 131, 810 S.E.2d 430, 432 (Ct. App. 2017) (quoting *Laser Supply & Servs., Inc. v. Orchard Park Assocs.*, 382 S.C. 326, 340, 676 S.E.2d 139, 147 (Ct. App. 2009)).

## LAW/ANALYSIS

### I. Specific Performance

Generally, "[s]pecific performance should be granted only if there is no adequate remedy at law and specific enforcement of the contract is equitable between the parties." *Campbell*, 361 S.C. at 263, 603 S.E.2d at 627 (quoting *Ingram*

*v. Kasey's Assocs.*, 340 S.C. 98, 105, 531 S.E.2d 287, 291 (2000)). However, "[w]hen land is the subject matter of an agreement[,] the jurisdiction of equity to enforce specific performance is undisputed[] and does not depend on the inadequacy of the legal remedy in the particular case." *Adams v. Willis*, 225 S.C. 518, 526, 83 S.E.2d 171, 175 (1954); *see also Belin v. Stikeleather*, 232 S.C. 116, 123, 101 S.E.2d 185, 188 (1957) ("It is elementary that the jurisdiction of equity to grant specific performance of an agreement of this kind does not depend upon the inadequacy of the legal remedy in the particular case."). "Equity will not decree specific performance unless the contract is fair, just, and equitable." *Campbell*, 361 S.C. at 263, 603 S.E.2d at 627. Accordingly, "specific performance of a contract to sell real property will be ordered whe[n] the contract 'is fair and was entered into openly and aboveboard.'" *Amick v. Hagler*, 286 S.C. 481, 485, 334 S.E.2d 525, 527 (Ct. App. 1985) (quoting *Adams*, 225 S.C. at 528, 83 S.E.2d at 176).

> In order to compel specific performance, a court of equity must find: (1) clear evidence of an agreement; (2) that the agreement has been partly carried into execution on one side with the approbation of the other; and (3) that the party who comes to compel performance has performed on his part, or has been and remains able and willing to perform his part of the contract.

*Gibson v. Hrysikos*, 293 S.C. 8, 13–14, 358 S.E.2d 173, 176 (Ct. App. 1987).

Appellants argue the special referee erred in granting Shirey specific performance because 1) there was no valid contract as Shirey breached the contract and the oral extension of the closing date was ineffective under the statute of frauds; 2) the equities of the transaction did not favor specific performance; and 3) Shirey has not demonstrated that he was capable of performing the contract at the time of filing.[5] We will address each argument in turn.

---

[5] Appellants also argue that Robinson is entitled to the Property under the 2012 Robinson Contract because Bishop never held her in default for late or missed payments. We find the referee properly determined that Bishop's act of entering into the Shirey Contract evinced her intent to hold Robinson in default of the 2012 Robinson Contract. *Cf. Masonic Temple v. Ebert*, 199 S.C. 5, 16, 18 S.E.2d 584, 589 (1942) ("[T]he law does not require a notice of withdrawal of an offer to be in any particular form."); *id.* ("[I]t [is] sufficient that the [offeror] does some act inconsistent with it[] and the [offeree] has knowledge of such act." (citation omitted)). Accordingly, the referee properly determined that Robinson was not

### a. Contract validity and the statute of frauds

Appellants argue Shirey is not entitled to specific performance because the Shirey Contract was no longer valid after Shirey breached by asking Bishop to close on the day after the initial closing date. Shirey argues he did not breach the Shirey Contract because the contract was orally extended. We agree with Shirey.

Appellants argue the oral modification of the Shirey Contract's closing date was ineffective under the statute of frauds.[6] Shirey argues Appellants waived this argument by failing to plead it in their answers. We agree with Shirey.

The statute of frauds is an affirmative defense that must be set forth in the responsive pleading of the party seeking its protection. *See* Rule 8(c), SCRCP ("In pleading to a preceding pleading, a party shall set forth affirmatively the defenses: . . . statute of frauds . . . ."); *Am. Wholesale Corp. v. Mauldin*, 128 S.C. 241, 243, 122 S.E. 576, 576 (1924) ("[T]he party seeking the protection of the statute of frauds must plead it."); *Parker v. Shecut*, 340 S.C. 460, 489, 531 S.E.2d 546, 561 (Ct. App. 2000) ("Affirmative defenses, such as the statute of frauds, must be set forth in a responsive pleading."), *rev'd on other grounds*, 349 S.C. 226, 562 S.E.2d 620 (2002).

Here, neither appellant pleaded the statute of frauds in their answers to Shirey's amended complaint, nor did Bishop plead the statute of frauds in her answer to Shirey's original complaint. Moreover, neither appellant argued this issue while they were before the special referee. Therefore, Appellants have waived this defense by failing to include it in their responsive pleadings. *See Am. Wholesale Corp.*, 128 S.C. at 243, 122 S.E. at 576 ("[T]he party seeking the protection of the statute of frauds *must* plead it." (emphasis added)). Accordingly, because Appellants have waived the statute of frauds, the oral extension of the closing date was effective. Thus, the Shirey Contract was still valid and enforceable on August 13, 2015. *See*

---

entitled to the Property under the 2012 Robinson Contract. *See Davis v. Monteith*, 289 S.C. 176, 345 S.E.2d 724 (1986) (finding a purchaser who failed to perform under the land sale contract had "no legal right to the property").

[6] Appellants also argue the oral modification is ineffective because the Shirey Contract required that all modifications be in writing. This argument is without merit. *See ESA Servs., LLC. v. S.C. Dep't of Rev.*, 392 S.C. 11, 23, 707 S.E.2d 431, 438 (Ct. App. 2011) ("Written contracts may be orally modified by the parties, even if the writing itself prohibits oral modification.").

*Gibson*, 293 S.C. at 13–14, 358 S.E.2d at 176 ("In order to compel specific performance, a court of equity must find . . . clear evidence of an agreement[.]").

### b. Equities of the transaction

Appellants argue the special referee erred in granting specific performance because the equities of the transaction do not favor such relief. At the outset, Shirey argues this issue has not been preserved for appellate review because it was not raised to and ruled upon by the special referee. We agree. Appellants never argued that the equities of the transaction did not favor specific performance while they were before the referee. Rather, Appellants raise the issue for the first time on appeal. *See Pye v. Estate of Fox*, 369 S.C. 555, 564, 633 S.E.2d 505, 510 (2006) ("It is well settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved."). Accordingly, this issue has not been preserved for appellate review.

### c. Capability of performing

Appellants argue the referee erred in granting specific performance because Shirey did not demonstrate that he was capable of performing his obligations under the contract both at the closing and at the time of the action. Shirey argues specific performance was justified because he fulfilled his obligations under the contract by tendering the purchase price on August 12, 2015. We agree with Shirey.

"In order to compel specific performance, a court of equity must find . . . that the party who comes to compel performance has performed on his part, or has been and remains able and willing to perform his part of the contract." *Gibson*, 293 S.C. at 13–14, 358 S.E.2d at 176. Here, the record indicates that Shirey was required to tender earnest money and the purchase price under the Shirey Contract.[7] Shirey tendered the earnest money on May 20, 2015. Shirey then deposited the purchase price with his attorney's office on August 12, 2015. Accordingly, the special referee correctly found that Shirey timely complied with his obligations under the Shirey Contract. The record also shows that upon receipt of a payoff quote for the TD Bank mortgage, Shirey's attorney intended to transfer the purchase price to Bishop in

---

[7] Appellants also argue that Shirey was incapable of performing because there is no evidence that his title insurer was prepared to deliver a title policy on August 12 or August 13. This argument is not preserved for appellate review because it was not raised to and ruled upon by the special referee. *See Pye*, 369 S.C. at 564, 633 S.E.2d at 510 ("[A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved.").

exchange for a deed to the Property. Thus, there is evidence in the record demonstrating that Shirey has partially performed his obligations under the Shirey Contract and remains ready, willing, and able to complete performance of his part of the contract.

Based on the foregoing, there is evidence demonstrating: 1) a valid agreement; 2) that Shirey partially performed his part of the contract with Bishop's consent; and 3) that Shirey remains ready, willing, and able to complete performance and purchase the Property. *See Gibson*, 293 S.C. at 13–14, 358 S.E.2d at 176 ("In order to compel specific performance, a court of equity must find: (1) clear evidence of an agreement; (2) that the agreement has been partly carried into execution on one side with the approbation of the other; and (3) that the party who comes to compel performance has performed on his part, or has been and remains able and willing to perform his part of the contract."); *see also Clardy v. Bodolosky*, 383 S.C. 418, 427, 679 S.E.2d 527, 531 (Ct. App. 2009) ("We find the Clardys satisfied the elements of [specific performance]; there is evidence of a valid agreement, the Clardys performed their part of the contract with Bodolosky's consent, and the Clardys remain able and willing to buy the real estate."). Accordingly, we affirm the special referee's grant of specific performance.

## II. Setting aside the deed

Appellants argue the special referee erred in setting aside the deed to Robinson because Robinson and Bishop were not in a confidential relationship and there was no evidence of undue influence. Shirey argues the referee's order should be affirmed under Rule 220(c), SCACR because the cancellation of a deed is the proper remedy when a purchaser is entitled to specific performance of a contract to sell land and the seller has conveyed the land to a third party with notice of the purchaser's claim.[8]

Appellants also argue the special referee erred in setting aside the deed after determining Robinson and Bishop were in a confidential relationship because mere familial relationships are inadequate to establish a confidential relationship.[9] We disagree.

---

[8] Because we find that the referee's ruling was proper, we decline to address Shirey's alternative sustaining ground. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (indicating that an appellate court need not address remaining issues when resolution of a prior issue is dispositive).

[9] Appellants further argue this court must rule in their favor on this issue because Shirey did not respond to their argument in his brief, citing *Turner v. S.C. Dep't of*

"A deed regular and valid on its face raises a presumption of validity." *Hudson v. Leopold*, 288 S.C. 194, 196, 341 S.E.2d 137, 138 (1986). However, "[o]nce a confidential relationship is shown, the deed is presumed invalid." *Bullard*, 294 S.C. at 280, 363 S.E.2d at 900. "A [confidential] relationship between the grantor and grantee may give rise to a presumption of undue influence, thus shifting the burden of proof to the grantee to rebut the presumption." *Hudson*, 288 S.C. at 196, 341 S.E.2d at 138.

"A confidential relationship arises when the grantor has placed his trust and confidence in the grantee, and the grantee has exerted dominion over the grantor." *Brooks v. Kay*, 339 S.C. 479, 488, 530 S.E.2d 120, 125 (2000). A confidential relationship does not arise based merely on a family relationship, friendship, or confidence and affection. *Hudson*, 288 S.C. at 196, 341 S.E.2d at 138–39; *Brooks*, 339 S.C. at 488, 530 S.E.2d at 125. Rather, "[t]he essence of the relationship is the trust and confidence." *Brooks*, 339 S.C. at 488, 530 S.E.2d at 125. Thus, "[s]ome evidence is required that the grantor actually reposed trust in the grantee in the handling of her affairs." *Id*.; *see also Middleton v. Suber*, 300 S.C. 402, 405, 388 S.E.2d 639, 641 (1990).

In *Dixon v. Dixon*, our supreme court determined that a mother and son were in a confidential relationship after considering the following factors: 1) the parties were related; 2) the mother gave her son a limited power of attorney; 3) after a deed from the mother to the son was recorded, they opened up a joint bank account consisting entirely of the mother's money; 4) the son prepared all of the documents in question, including the deed; and 5) the mother signed the documents without first consulting an attorney. 362 S.C. 388, 398, 608 S.E.2d 849, 853–54 (2005). The court further explained that while "a familial relationship, alone, is [not] sufficient evidence of a confidential relationship, a familial relationship certainly *supports* an argument that a confidential relationship exists." *Id*. at 398, 608 S.E.2d at 853 (footnote omitted).

The case at bar is strikingly similar to the mother-son relationship in *Dixon*. First, Bishop is Robinson's aunt, and the two admitted that they frequently talk and visit with each other. *See id*. ("[A] familial relationship certainly *supports* an

---

*Health and Envtl. Control*, 377 S.C. 540, 547, 661 S.E.2d 118, 121 (Ct. App. 2008), for the same proposition. However, the opinion plainly states the appellate court *may* treat the failure to respond as a confession that the appellant's position is correct. We decline to do so here as the referee's ruling was proper.

argument that a confidential relationship exists."). Second, Bishop testified that she forwarded all of the TD Bank statements to Robinson when Robinson was making the payments, but did not check to ensure that Robinson was making the payments. Third, Robinson prepared the deed and 2015 Robinson Contract. Fourth, Bishop signed the deed and 2015 Robinson Contract without first consulting an attorney. Fifth, Bishop indicated that she was so distraught on August 13, 2015, that she did not understand what she was signing when she entered into the 2015 Robinson Contract and deed. Finally, Robinson included a provision in the 2015 Robinson Contract that required Bishop to indemnify Robinson in the event of any fraud or illegality concerning the transaction.

Given these facts, we find that Bishop and Robinson were in a confidential relationship. That Bishop reposed trust in Robinson is apparent from the record, as she did not hesitate to sign the land sale documents that Robinson prepared despite the fact that she did not understand what she was signing. Moreover, the fact that Robinson included an indemnity clause in the 2015 Robinson Contract, which she drafted and Bishop did not understand, is demonstrative of the concerns our courts have regarding land transactions between individuals in a confidential relationship. The indemnity provision is seemingly designed so that Bishop assumed all of the potential liability stemming from the breach of the Shirey Contract. However, under the 2015 Robinson Contract, Bishop did not receive anything that she did not receive in the 2012 Robinson Contract by agreeing to indemnify Robinson. As such, it appears Bishop signed a contract that she did not understand was not in her best interests, without consulting an attorney, because she trusted Robinson. *See Brooks*, 339 S.C. at 488, 530 S.E.2d at 125 ("Some evidence is required that the grantor actually reposed trust in the grantee in the handling of her affairs."). Thus, the special referee did not err in finding that Robinson and Bishop were in a confidential relationship. Further, Robinson did not rebut the presumption of undue influence that arose from the evidence showing a confidential relationship. *See Bullard*, 294 S.C. at 280, 363 S.E.2d at 900 ("Once a confidential relationship is shown, the deed is presumed invalid."); *Hudson*, 288 S.C. at 196, 341 S.E.2d at 138 ("A [confidential] relationship between the grantor and grantee may give rise to a presumption of undue influence, thus shifting the burden of proof to the grantee to rebut the presumption."). Therefore, the referee properly set aside the deed.

### III. Equitable interests and bona fide purchasers

Appellants argue that if Shirey is entitled to specific performance, the special referee erred in determining the conveyance was not subject to Robinson's equitable interest in the Property. Shirey argues the referee properly determined that Shirey,

as a bona fide purchaser, took the Property free of Robinson's equitable interest.  We agree with Shirey.

"The general rule is that a purchaser of land takes subject to outstanding equitable interests in the property [that] are enforceable against him to the same extent they are enforceable against the seller[] whe[n] the purchaser is not entitled to protection as a bona fide purchaser."  *Smith v. McClam*, 289 S.C. 452, 458, 346 S.E.2d 720, 724 (1986).

> To claim the status of a bona fide purchaser, a party must show (1) actual payment of the purchase price of the property, (2) acquisition of legal title to the property, or the best right to it, and (3) a bona fide purchase, 'i.e., in good faith and with integrity of dealing, without notice of a lien or defect.'

*Robinson v. Estate of Harris*, 378 S.C. 140, 146, 662 S.E.2d 420, 423 (Ct. App. 2008) (quoting *Spence v. Spence*, 368 S.C. 106, 117, 628 S.E.2d 869, 874–75 (2006)).  "The bona fide purchaser must show all three conditions . . . occurred before he had notice of a title defect or other adverse claim, lien, or interest in the property."  *Spence*, 368 S.C. at 117, 628 S.E.2d at 875.

Here, Shirey tendered the purchase price for the Property on August 12, 2015.  Moreover, the record reveals that Shirey did not have notice of Robinson's claims to the Property before entering into the Shirey Contract, tendering the purchase price, or filing the action at bar.  In fact, the Shirey Contract included a warranty provision indicating that no other person or entity had an interest in or claimed possession of the Property.  Thus, whether Shirey is a bona fide purchaser will turn on whether he acquired title to the Property or had "the best right to it."

Robinson argues that Shirey is not a bona fide purchaser because he now has notice of Robinson's claims to the Property and has not yet acquired title.  However, it would not be equitable to allow Robinson's interference with the Shirey Contract to defeat Shirey's status as a bona fide purchaser.  By allowing Robinson to maintain an equitable interest in the Property after procuring Bishop's breach of the Shirey Contract, this court would be sanctioning, if not rewarding, Robinson's misconduct.  Furthermore, a purchaser does not have to actually acquire the title before receiving notice of any outstanding encumbrances or equities in the property in order to be deemed a bona fide purchaser.  Rather, our courts have indicated that a party may acquire bona fide purchaser status if the party acquires "the best right to" the title before receiving notice of any outstanding encumbrances or equities in the property.

*See S.C. Tax Comm'n v. Belk*, 266 S.C. 539, 543, 225 S.E.2d 177, 179 (1976) (indicating the party seeking bona fide purchaser status must acquire the title, or best right to it, and pay the purchase price "before notice of outstanding [e]ncumbrances or equities").  As indicated in Section I, Shirey is entitled to specific performance of the Shirey Contract, which entitled him to take the Property upon tendering the purchase price.  Consequently, we find that Shirey acquired the "best right to" the Property's title upon tendering the purchase price, which occurred before he learned of Robinson's interest in the Property.  Accordingly, the special referee did not err in finding that Shirey was a bona fide purchaser and not subject to any equitable interest that Robinson may have in the Property.

## IV.    Attorney's fees

Appellants argue the special referee erred in awarding Shirey attorney's fees because Shirey breached the Shirey Contract first.  Shirey argues the referee properly awarded him attorney's fees because the contract provided for attorney's fees and he was the prevailing party.  We agree with Shirey.

"In South Carolina, the authority to award attorney's fees can come only from a statute or . . . the language of a contract.  There is no common law right to recover attorney's fees." *Seabrook Island Prop. Owners' Ass'n v. Berger*, 365 S.C. 234, 238–39, 616 S.E.2d 431, 434 (Ct. App. 2005) (quoting *Harris-Jenkins v. Nissan Car Mart, Inc.*, 348 S.C. 171, 176, 557 S.E.2d 708, 710 (Ct. App. 2001)).

Appellants do not challenge the reasonableness of the attorney's fees awarded to Shirey.  Rather, Appellants argue that it is the Appellants, not Shirey, who are entitled to attorney's fees.  In *Raynor*, this court held that the circuit court did not abuse its discretion in awarding attorney's fees where the contract at issue provided for attorney's fees.  422 S.C. at 132, 810 S.E.2d at 433.  Like the case at bar, the appellants in *Raynor* argued the respondents were not entitled to attorney's fees but did not challenge the reasonableness of the attorney's fee award.  *Id*. at 131, 810 S.E.2d at 432.  This court determined that "[t]he contract between the parties clearly provided for the recovery of reasonable attorney's fees for necessary litigation in the event of default."  *Id*. at 132, 810 S.E.2d at 432–33.  Accordingly, this court found that "the circuit court did not abuse its discretion because there was evidence to support its finding that the contract allowed for an award of attorney's fees."  *Id*. at 132, 810 S.E.2d at 433.

Here, the contract provided that, "[i]n the event of any litigation between Buyer and Seller regarding this Contract, the losing party shall promptly pay the prevailing party's attorneys' fees and expenses and costs of litigation."  Accordingly,

the contract clearly allows for the prevailing party to recover attorney's fees. Thus, because Shirey was the prevailing party, the special referee did not abuse his discretion in awarding Shirey attorney's fees. *See id*. ("[T]he circuit court did not abuse its discretion because there was evidence to support its finding that the contract allowed for an award of attorney's fees.").

## CONCLUSION

Based on the foregoing, we affirm the special referee's order.

**AFFIRMED.**

**LOCKEMY, C.J., and HEWITT, J., concur.**